**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-1501-REB

SAN JUAN CITIZENS ALLIANCE;
CENTER FOR BIOLOGICAL DIVERSITY;

Petitioners,

v.

DEREK PADILLA, in his official capacity as District Ranger, Mancos-Dolores Ranger District, San Juan National Forest;
DAVID NEELY, in his official capacity as San Juan National Forest Supervisor;
UNITED STATES FOREST SERVICE;
UNITED STATES DEPARTMENT OF AGRICULTURE;

Respondents.

---

**RESPONDENTS' OPPOSITION TO**
**PETITIONERS' MOTION TO AMEND COMPLAINT**

---

Petitioners' First Motion to Amend Complaint, ECF No. 22, seeks to: (1) add information specific to the House Creek timber sale implementing the challenged Salter Vegetation Management Project ("Salter Project"), and (2) add a new claim alleging the Forest Service violated the National Environmental Policy Act ("NEPA") and the Collaborative Forest Landscape Restoration Program ("CFLRP") by not incorporating criteria from the CFLRP legislation into its environmental analysis of the Salter Project. *See id.* at 2-5; *see also* Proposed First Am. Compl., ECF No. 22-2.

Information on subsequent implementation of the Salter Project is not relevant to

Petitioners' Administrative Procedure Act ("APA") challenge to the Forest Service's November 18, 2021 Decision Notice and Finding of No Significant Impact ("FONSI") authorizing the Project. Even so, Respondents do not oppose Petitioners' proposed additions to the Complaint regarding the House Creek timber contract because they are incorporated into Petitioners' existing NEPA claims.

Respondents do, however, oppose the addition of proposed Claim Eight regarding the CFLRP. The Court should deny Petitioners' motion to add the CFLRP claim because the proposed amendment is futile: NEPA does not require analysis of a project's potential funding mechanism; nothing in the CFLRP requires that the statute's criteria be analyzed as part of a NEPA analysis for a proposed project; and Petitioners failed to exhaust administrative remedies in order to challenge the Dolores Watershed Resilient Forest ("DWRF") Collaborative's participation in development of the Project.

## BACKGROUND

The Forest Service issued a Decision Notice and FONSI authorizing the Salter Project on the San Juan National Forest on November 18, 2021. *See* FS003173. The Project was designed to improve resilience and resistance to bark beetle and disease outbreaks, to increase the structural diversity of the ponderosa pine forest, and to provide economic support to local communities through sustainable timber production. FS003156-57.

The Project authorizes treatment of approximately 22,346 acres in six treatment blocks, including through commercial thinning and harvest of individual trees to promote structural diversity and a density of trees that aligns with the desired conditions in the San Juan Land and Resource Management Plan. *See* FS003157; FS003184;

FS001840. Pursuant to NEPA, the Forest Service also prepared an Environmental Assessment ("EA") for the Project, which analyzed in detail the current condition of the Forest and the potential environmental impacts of three Project alternatives. *See generally* FS001833-1946. The EA explained that the Forest Service had and would continue to engage with the DWRF Collaborative—"a diverse group of stakeholders that have worked since 2015 to support and enhance forest, watershed, and community resilience in Montezuma and Dolores Counties, Colorado," FS001923—as part of its commitment to engage stakeholders and the public during both the development and implementation phases of the Salter Project, *see* FS001923-24. The EA explains that "information and recommendations provided by the collaborative have been given consideration in the design" of the Salter Project, and that the agency has worked with the DWRF Collaborative to share information with "an overall goal of transparent deliberation and discussion on all proposed projects." FS001923.

Petitioners filed their Complaint challenging the Salter Project on June 14, 2023. ECF No. 1. The Complaint pleads seven claims for relief under NEPA, each challenging the Forest Service's Decision and FONSI authorizing the Salter Project and the EA that informed that Decision. *See id.* ¶¶ 81-128. Petitioners filed their First Motion to Amend Complaint on November 8, 2023. ECF No. 22.

The proposed Amended Compliant adds several paragraphs describing implementation of one of the "treatment blocks" outlined in the Decision Notice and EA—the House Creek timber sale.[1] *See* ECF No. 22-2 ¶¶ 4-6, 68, 86-88. The

[1] The House Creek timber contract was awarded on April 12, 2023, after the Forest Service issued its Decision Notice and FONSI authorizing the Salter Project and before Petitioners filed their Complaint. *See* ECF No. 12 at 4. No operations under the House Creek contract are planned or anticipated before April 1, 2024. *See id.*

proposed House Creek additions to the Complaint are incorporated into Petitioners' existing claims. *See id.* ¶¶ 93, 97, 99-100, 113, 119, 121, 133.

The proposed Amended Complaint also includes several new paragraphs related to the CFLRP—a federal statute that was enacted as part of the Omnibus Public Land Management Act of 2009. *See id.* ¶¶ 7-9; 16 U.S.C. §§ 7301-04; Pub. L. No. 111-11, 123 Stat. 991 (2009). The purpose of the CFLRP is "to encourage the collaborative, science-based ecosystem restoration of priority forest landscapes[.]" 16 U.S.C. § 7301. The statute directs the Secretary of Agriculture to "establish a Collaborative Forest Landscape Restoration Program to select and fund ecological restoration treatments for priority forest landscapes[.]" *Id.* § 7303(a). The statute contemplates a process by which "collaborative forest landscape restoration proposal[s]" may be nominated and selected for funding by the Secretary. *Id.* § 7303.

As Petitioners' motion highlights, the San Juan National Forest submitted one such proposal (prepared jointly with three primary collaborative groups) in January 2020 encompassing most of the San Juan National Forest: the Southwest Colorado Collaborative Forest Restoration Initiative ("SW Colorado Initiative"). ECF No. 22-1 at 3.[2] The proposal addressed the various CFLRP eligibility criteria set forth at 16 U.S.C. § 7303(b). *See* ECF No. 22-1 at 3-40. The proposal also noted site-specific projects within the proposal's boundary for which the Forest had already completed NEPA or for which NEPA was in process. *Id.* at 15. It explained that some priority areas were ready for treatment and funding because the Forest Service had already completed NEPA analyses for vegetation management projects in those areas, and that in other priority

[2] Citations to this proposal document are to the CM/ECF page numbers, not the document's internal pagination.

treatment areas NEPA analyses of site-specific projects were still "pending" or forthcoming. *Id.* On April 18, 2022, the Secretary of Agriculture selected the SW Colorado Initiative as a program that would receive funding through the CFLRP. *See* ECF No. 22 at 2 n.1. Nothing in the Salter Project's EA, Decision Notice, or FONSI conditioned the Project on receiving CFLRP funding through the SW Colorado Initiative.

Petitioners' proposed additions to the Complaint allege that the Forest Service's engagement with the DWRF Collaborative in soliciting ideas for Salter Project development "was not CFLRP-compliant" and "not compliant with the explicit reporting and informational requirements in [the] Federal Advisory Committee Act ('FACA')." ECF No. 22-2 ¶¶ 7-8. Petitioners' proposed amendments also allege that the Forest Service and the DWRF Collaborative have "sought, and received, federal funding to assess the Salter Project through the Southwest Colorado Collaborative Forest Landscape Restoration Initiative," *id.* ¶ 7, that the Project itself "is not CFLRP-compliant," *id.*, and that "[i]ssues raised in the DWRF meetings were considered by the Salter Project decisionmakers without the benefit of interdisciplinary NEPA analysis," *id.* ¶ 9.

Petitioners' proposed new Claim Eight encapsulating these allegations, *id.* ¶¶ 142-52, alleges that the Forest Service has "unlawfully begun implementing the Salter Project using federal funds designated for collaborative programs without NEPA disclosure and analysis of landscape restoration criteria." *Id.* at p. 49.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 15, a party may amend its pleading with the opposing party's written consent or leave of court. Fed. R. Civ. P. 15(a)(2). "While Rule 15 provides that leave to amend a complaint shall be freely given when justice so

requires, a district court may refuse to allow amendment if it would be futile." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id*. (quoting *Bradley v. Val-Meijas*, 379 F.3d 892, 901 (10th Cir. 2004)).

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("The legal sufficiency of a complaint is a question of law."). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

In reviewing a motion to dismiss under Rule 12(b)(6), "a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." *Moss v. Kopp*, 559 F.3d 1155, 1159 n.1 (10th Cir. 2009) (quotation omitted). However, a court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

## ARGUMENT

### I. Petitioners' Proposed Claim Eight Fails to State a Claim Regarding CFLRP Eligibility Criteria

Proposed Claim Eight appears to primarily allege that the Forest Service violated NEPA by failing to consider certain criteria contained in the CFLRP in its environmental analysis of the Salter Project. *See, e.g.*, ECF No. 22 at 5 (characterizing the "subject matter" of proposed Claim Eight as "the challenged Salter Project and NEPA non-compliance"); ECF No. 22-2 ¶ 145 ("Plaintiffs, the DWRF, decisionmakers, and the public have not been informed, through NEPA analysis, of the Salter Project eligibility for CFLRP funding."); *id.* ("The CFLRP requirement to create a restoration strategy based on, among other things, '*maximizing* the retention of large trees, as appropriate for the forest type' was not addressed in the NEPA analysis."); *id.* ¶ 152 ("Defendants' use of collaborative processes and funding, without first complying with NEPA and other statutory restrictions on agency actions, was therefore arbitrary and capricious[.]"); *but see* ECF No. 22 at 2 ("Claim 8[] was added to address violations of the CFLRP").

Whether viewed as a NEPA claim or as a claim alleging a violation of the CFLRP itself, Petitioners fail to state a claim upon which relief can be granted. NEPA does not require an agency to analyze potential funding sources (and eligibility for those funding sources) in its environmental analysis of a proposed project. The CFLRP likewise does not require any project ultimately funded through the statute to have assessed its eligibility for such funding in a NEPA document. Petitioners' motion to amend the Complaint to add proposed Claim Eight is thus futile and should be denied.

#### A. NEPA Does Not Require Analysis of Potential Funding Sources

NEPA does not require an agency to analyze how a proposed project will be

funded or whether its subsequent implementation will be eligible for future funding or appropriations under statutory funding mechanisms like the CFLRP. A court reviewing NEPA claims is charged only with ensuring the agency has presented a "full and fair discussion of significant *environmental impacts*" so as to "inform[] decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment." *Audubon Soc'y of Greater Denver v. U.S. Army Corps of Eng'rs*, 908 F.3d 593, 598 (10th Cir. 2018) (quoting 40 C.F.R. § 1502.1) (emphasis added). Mere funding of an agency program is not a "major federal action," and agencies need not prepare NEPA analyses for appropriations requests. *See Andrus v. Sierra Club*, 442 U.S. 347, 362 (1979) (holding NEPA does not require agencies to prepare environmental analysis documents for appropriations requests because "appropriation requests do not 'propose' federal actions at all; they instead fund actions already proposed.").

Accordingly, a NEPA analysis document, which assesses potential environmental impacts of an agency's proposed action, is not required to include a description of a proposed project's funding source, let alone assess criteria for whether the proposed project would be eligible for that funding source. As set forth in NEPA's implementing regulations, an EA is a "concise public document" that must "[b]riefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact." 40 C.F.R. § 1508.9(a).[3] It "[s]hall include brief discussions of the need for the proposal, of

[3] The Council on Environmental Quality promulgated regulations implementing NEPA in 1978, 43 Fed. Reg. 55978 (Nov. 29, 1978), and amended them in 1986, 51 Fed. Reg. 15618 (Apr. 25, 1986). Effective September 14, 2020, the Council revised the NEPA regulations again, 85 Fed. Reg. 43304 (July 16, 2020). The claims here arise under the

alternatives as required by section 102(2)(E), of the environmental impacts of the proposed action and alternatives, and a listing of agencies and persons consulted." 40 C.F.R. § 1508.9(b). The Salter EA contains all these required elements. *See* FS001833-1946. NEPA regulations do not require the Salter EA to include an additional analysis of how the proposed project would or could be funded.

Moreover, NEPA does not require additional analysis before an agency can fund already-authorized agency actions that have already been analyzed under NEPA. *See Andrus*, 442 U.S. at 362 ("if the mere funding of otherwise unaltered agency programs were construed to constitute major federal actions significantly affecting the quality of the human environment, the resulting [Environmental Impact Statements ("EIS's")] would merely recapitulate the EIS's that should have accompanied the initial proposals of the programs."); *Coston*, 773 F.2d at 1518 (where a funding program "merely sets out procedures for the Regional Forester to review construction proposals submitted by the Forest Supervisors in order to establish regional priorities for the allocation of limited federal funds," requiring the Forest Service to prepare a NEPA analysis for that program "would be to create 'unnecessary redundancy'" (quoting *Andrus*, 442 U.S. at 362)).

At bottom, Petitioners point to no provision in NEPA or its implementing regulations that would require the Forest Service's NEPA analysis for the Salter Project to analyze how the project would be funded and whether it could meet the CFLRP's eligibility criteria for funding future implementation. Nor can they—no such requirement exists. Petitioners' proposed NEPA claim alleging the Forest Service improperly failed

---

1978 regulations, as amended in 1986, because the NEPA process was initiated before the effective date of the revised regulations. All citations in this brief are to the regulations as codified at 40 C.F.R. Part 1500 (2019).

to evaluate CFLRP funding criteria in the Salter Project EA thus fails to state a claim.

### B. The CFLRP Does Not Require Analysis of its Funding Eligibility Criteria in a NEPA Document

Even if the Court were to construe proposed Claim Eight as asserting that the Forest Service violated the CFLRP by approving the Salter Project without analyzing CFLRP eligibility criteria in the Project's NEPA analysis, such an allegation would also fail to state a claim. Nothing in the CFLRP requires agencies to analyze whether a particular site-specific project meets its funding criteria prior to project approval or in the proposed project's NEPA analysis document.[4] *Cf. Earth Island Institute v. Nash*, 607 F. Supp. 3d 1056, 1082-84 (E.D. Cal. 2022) (looking to the text of the relevant statute when the plaintiffs had alleged that a distribution of funding was "unlawful and contrary to the letter and spirit of the Acts under which the funding was appropriated," and ultimately upholding the agency action). The CFLRP states that the Secretary's selection and funding of treatments must be "in accordance with" NEPA, the Endangered Species Act, and all other applicable laws, *see* 16 U.S.C. § 7303(a), but this provision merely makes clear that treatments funded under the CFLRP must comply with NEPA and other federal laws. *See Coston*, 773 F.2d at 1516. It does not suggest that CFLRP eligibility criteria must be analyzed or incorporated into the NEPA analysis for treatment projects before they can utilize CFLRP funding.

The CFLRP contemplates that program *proposals* must meet its eligibility criteria in order to be nominated and selected by the Secretary and CFLRP advisory panel for

---

[4] Not only is such pre-authorization analysis of funding criteria not required by the CFLRP, it would not have been logical for the Forest Service to engage in such an analysis in this case. At the time the Forest Service proposed, analyzed, and approved the Salter Project, the SW Colorado Initiative had not yet been approved or received funding under the CFLRP.

approval and funding. *See id.* §§ 7303(b), (d), (e). The San Juan National Forest submitted just such a proposal in 2020—the SW Colorado Initiative proposal. That proposal addressed the CFLRP criteria. *See* ECF No. 22-1 at 3-40. That proposal contemplated funding numerous projects within its boundaries without specifically identifying every site-specific project it might eventually fund. *Id.* at 15. That proposal was ultimately selected for funding by the Secretary of Agriculture and the CFLRP advisory panel, pursuant to the statute. *See* ECF No. 22 at 2 n.1.

The Salter Project may be eligible to receive funding through the SW Colorado Initiative, as approved and funded by the Secretary of Agriculture. But, contrary to Petitioners' insinuations, the Forest Service has not submitted the Salter Project as a proposal for direct CFLRP funding and never purported to do so during the NEPA process or in the final Decision Notice and FONSI for the Salter Project. *See generally* FS001833-1946 (Salter EA); FS003156-85 (Salter Decision Notice and FONSI). If Petitioners believe the 2020 SW Colorado Initiative proposal did not meet the CFLRP eligibility criteria or if they otherwise object to the Secretary of Agriculture's 2022 decision to approve and fund the SW Colorado Initiative, their lawsuit challenging the Salter Project is not a proper avenue for such claims.

## II. Petitioners' Proposed Claim Eight Fails to State a Claim Regarding DWRF Collaborative Participation

Proposed Claim Eight also weaves in a distinct argument that the Forest Service's involvement with the DWRF Collaborative violates the CFLRP as well as a separate federal statute, the FACA, which governs agency use of "advisory committees" in decisionmaking. *See* ECF No. 22-2 ¶ 149 ("Defendants' participation and use of the DWRF to provide management advice for the Salter Project is not CFLRP-compliant.");

*id.* ¶ 150 ("Defendants' participation and use of the formal collaboration processes, including the DWRF, in preparation and implementation of the Salter Project was not compliant with the explicit establishment, membership, reporting, and informational requirements in [FACA]. 55 [sic] U.S.C. App. § 1 *et seq.*").

Petitioners' proposed challenge to the Forest Service's involvement with the DWRF Collaborative during development of the Salter Project is barred by the doctrine of administrative exhaustion. The Salter Project EA thoroughly details the Forest's work with the DWRF Collaborative regarding the Salter Project. *See* FS001923-24.[5] Yet Petitioners' Objections to the Final EA and Draft Decision and FONSI do not put the agency on notice that Petitioners objected to the Forest Service's work with the DWRF Collaborative or believed such collaboration violated either the CFLRP or the FACA. *See* FS002987-3006 (San Juan Citizens Alliance Objection); FS001999-2986 (Center for Biological Diversity Objection). Neither Objection (nor any other objection received during the objections period) suggests that "use of the formal collaboration processes, including the DWRF, in preparation and implementation of the Salter Project was not compliant with the explicit establishment, membership, reporting, and informational requirements in [FACA]." ECF No. 22-2 ¶ 150. Nor do any objections suggest that Petitioners believed "participation and use of the DWRF to provide management advice for the Salter Project is not CFLRP-compliant." *Id.* ¶ 149.

Statutes and regulations governing Forest Service programs impose a mandatory exhaustion requirement upon petitioners challenging Forest Service

[5] Moreover, as a *member* of the DWRF Collaborative, Petitioner San Juan Citizens' Alliance was undoubtedly familiar with the collaborative process even before the Final EA issued. *See* https://dwrfcollaborative.org/about-us/ (last visited Nov. 24, 2023).

decisions. *See* 7 U.S.C. § 6912(e) (requiring that "a person shall exhaust all administrative appeal procedures . . . before the person may bring an action in a court"); 36 C.F.R. § 218.14(b) (stating that "[a]ny filing for Federal judicial review of a decisions covered by this subpart is premature and inappropriate unless the plaintiff has exhausted the administrative review process set forth in this part"). The exhaustion provision of 7 U.S.C. § 6912 is a mandatory statutory requirement. *Forest Guardians v. U.S. Forest Serv.*, 641 F.3d 423, 432 (10th Cir. 2011).

Furthermore, it is not enough for a petitioner simply to have participated in the administrative proceeding to assert a claim in federal court. Rather, a petitioner must have exhausted its administrative remedies for the *particular issues* it raises in court. *See id.* at 430-31 ("claims raised at the administrative appeal and in the federal complaint must be so similar that the district court can ascertain that the agency was on notice of, and had an opportunity to consider and decide, *the same claims* now raised in federal court." (quoting *Kleissler v. U.S. Forest Serv.,* 183 F.3d 196, 202 (3d Cir.1999) (emphasis added)); *see also Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1080-81 (9th Cir. 2010). The exhaustion rule discourages premature claims and ensures the agency is given a chance to correct its own mistakes and bring its expertise to bear to resolve a claim, thus avoiding litigation and unnecessary or "premature [judicial] interference with agency processes." *Forest Guardians*, 641 F.3d at 433 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)); *see also Woodford v. Ngo*, 548 U.S. 81, 89 (2006); *Buckingham*, 603 F.3d at 1080; *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 140 F. Supp. 3d 1123, 1189 (D.N.M. 2015). Issue exhaustion is particularly important in record review cases brought under the APA

because the agency can only defend itself based on materials that were before it at the time of the decision. *See generally Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 553-54 (1978).

Here, Petitioners have failed to meet the exhaustion requirement for the DWRF Collaborative component of Claim Eight, and thus this proposed claim is subject to dismissal and futile. *See Full Life Hospice, LLC*, 709 F.3d at 1018.[6] The Court should reject any argument that Petitioners could not have objected to the agency's work with the DWRF Collaborative until the SW Colorado Initiative was approved and created the potential for CFLRP funds to apply to Salter Project implementation. First, Petitioners' FACA claim is unrelated to the CFLRP and could have been raised during the administrative process. Second, approval of the SW Colorado Initiative—which post-dates authorization of the Salter Project—cannot retroactively render the agency's prior decision unlawful while also exempting Petitioners from the requirement that they exhaust administrative remedies for this potential claim.[7]

[6] The Court should reject any attempt by Petitioners to argue that their objection that certain information presented at a public DWRF Collaborative meeting was not included in the Final EA put the Forest Service on notice of the allegations in proposed Claim Eight. Petitioners' objections that certain materials presented at a public meeting were not included in the Final EA are unrelated to allegations that the agency violated the CFLRP or FACA through its involvement with the DWRF Collaborative during Salter Project development. *See Ark Initiative v. United States Forest Serv.*, 660 F.3d 1256, 1262 (10th Cir. 2011) (holding plaintiffs failed to exhaust administrative remedies when the plaintiffs' general references to "other" impacts during the administrative process was insufficient and lacked the requisite specificity to put the agency on notice); *Jarita Mesa Livestock Grazing Ass'n*, 140 F. Supp. 3d at 1189 (holding plaintiff failed to exhaust some claims for lack of specific allegations).

[7] On this point, *Karuk Tribe v. Kelley*, No. C 10–02039 WHA, 2011 WL 2444668, at *10-11 (N.D. Cal. June 13, 2011), is instructive. There, the district court rejected the plaintiffs' attempt to avoid waiver and exhaustion defenses by "re-characteriz[ing] their claims for relief" as "based on 'new information' and 'problems [that] came to light after implementation began.'" *Id.* at *10. The district court held that, "[i]n shifting focus to

Because Petitioners did not raise this claim administratively, the Forest Service did not have the opportunity to consider and address it in the Administrative Record for the Salter Project. *See Buckingham*, 603 F.3d at 1081. This claim is thus futile because it would be subject to dismissal, and the Court should deny Petitioners' motion to add it to the Amended Complaint.

## **CONCLUSION**

For these reasons, the Court should deny in part Petitioners' First Motion to Amend Complaint (ECF No. 22) by striking and denying the proposed addition of paragraphs 7-9 and 142-52 in the proposed Amended Complaint (ECF No. 22-2). Respondents take no position on the remaining changes in the proposed Amended Complaint.

Respectfully submitted this 29th day of November, 2023.

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

/s/ Emma L. Hamilton

implementation, plaintiffs tacitly acknowledge that their [new claim] does not belong in this action." *Id.* Here, Petitioners likewise "could have, but did not" challenge the Forest Service's collaboration with the DWRF Collaborative during the administrative review process. "Accordingly, they are not entitled to judicial review of that aspect of the [Salter] project." *Id.* at 11.

Moreover, even if this claim were not barred by the administrative exhaustion requirement, it would be futile because the DWRF Collaborative meet the requirements of the FACA, *see* 5 U.S.C. app. § 1, and the CFLRP actually *requires*, rather than restricts, stakeholder collaboration. *See, e.g.*, 16 U.S.C. § 7303(b), (b)(2) ("To be eligible for nomination under subsection (c), a collaborative forest landscape restoration proposal shall-- . . . be developed and implemented through a collaborative process[.]").

***Emma L. Hamilton***
(CA Bar No. 325360)
Trial Attorney
Natural Resources Section
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
Phone: (303) 844-1361
emma.hamilton@usdoj.gov

*Attorneys for Respondents*