**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| SAN JUAN CITIZENS ALLIANCE, and<br>CENTER FOR BIOLOGICAL DIVERSITY | ) | |
| Petitioners, | ) | Case No. 23-cv-1501-REB |
| v. | ) | |
| DEREK PADILLA, et.al, | ) | |
| Respondents. | ) | |

---

**PETITIONERS' ADMINISTRATIVE RECORD MOTION**

---

Petitioners respectfully submit Petitioners' Administrative Record ("AR") Motion. This motion is filed in accordance with jointly proposed scheduling orders establishing deadlines that are based, in part, on Petitioners' review of the administrative record. ECF 12, 21 (jointly proposed case management orders). The Parties conferred by letter and phone, but could not reach agreement. Petitioners' preferred remedy—considering the extreme circumstances of directed mass deletion of record materials and information and the resultant *post hoc* compilation of the AR—is setting aside all agency actions the Amended Complaint challenges.

## I. INTRODUCTION AND SUMMARY OF PROCEEDINGS

This Administrative Procedure Act ("APA") case challenges the Salter Vegetation Management Project ("Salter Project") that was approved through a three-tiered decisionmaking process: 1) San Juan National Forest Plan and Environmental Impact Statement; 2) Salter Project Decision Notice, Environmental Assessment/Finding of No Significant Impact ("DN/EA/FONSI"); and, 3) House Creek timber sale. ECF 1; ECF 22-2. The National Environmental Policy Act ("NEPA") process was concluded at the

second tier; no NEPA or public participation occurred at the third tier prior to the award of the House Creek timber sale.

On November 8, 2023, Petitioners filed a motion to amend the Complaint.[1] ECF 22. Two general matters were addressed: 1) additional agency action(s) taken when awarding the House Creek timber sale contract; and, 2) Collaborative Forest Landscape Restoration Program ("CFLRP"). 16 U.S.C. § 7303.

On November 8, 2023, Petitioners provided a detailed conferral letter that addressed, among other things, the erroneous standard that Ms. Brinton used to compile the record as set out in her sworn declaration. ECF 13-1 ("I coordinated the compilation of the Administrative Record responsive to the allegations contained in the petition filed in the above-captioned case."); Ex. 2 at 3; D.C.COLO.LCivR 7.1(a). On November 20, 2023, Respondents provided a conferral letter responding to Petitioner's conferral letter. Ex. 2 at 9. On November 22, 2023, Respondents filed a "notice" containing a second declaration that purported to replace Ms. Brinton's sworn testimony with boilerplate legal language. *Compare* ECF 13-1 at ¶2 *with* ECF 23-1 at ¶2.

## II. STANDARD OF REVIEW

During APA litigation, a district court reviews agency action based on the full AR, which "consists of all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches v. Yuetter,* 994 F.2d 735, 739 (10th Cir. 1993). The judicial record may also include evidence not contained in the AR that qualifies for one of the exceptions to the AR rule recognized in the Tenth Circuit. *Custer Cnty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1028 n.1 (10th Cir. 2001).

---

[1] The viability of Petitioners' allegations and additional claim for relief is recognized and confirmed in Respondents' opposition to the amended complaint. *E.g*. ECF 24 at 10 ("treatments funded under the CFLRP must comply with NEPA and other federal laws."). Petitioners will reply in due course to the opposition, which attacks the amendment on its merits, based heavily on the disputed AR.

"The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) *accord N.M. ex rel. Richardson v. BLM,* 565 F.3d 683, 704 (10th Cir. 2009) (review of NEPA decisions must "consider only the agency's reasoning at the time of decisionmaking").

In cases where an AR was prepared contemporaneously with the agency action, "the designation . . . is entitled to a presumption of administrative regularity." *Bar MK Ranches,* 994 F.2d at 740 (citation omitted). Even in cases where the designation is entitled to such a presumption, it can be overcome by showing, "'among other things, [that] defendants applied the wrong standard'" when initially compiling the administrative record. *Pitman v. U.S. Citizenship and Immigr. Servs.*, 2018 WL 3232355, at *3 (D. Utah 2018) applying *Bar MK Ranches* 994 F.2d at 739-740 (AR includes documents directly or indirectly considered by the decisionmaker).

Privileged information may be withheld, but must be identified by a privilege log that describes withheld information. *Id.*; *Save the Colo. v. Spellmon*, 2023 WL 2402923, at *4-*5 (D. Colo. Mar. 7, 2023) (reviewing caselaw). In the Tenth Circuit, "[a]n agency may not unilaterally determine what constitutes the [AR]." *Bar MK Ranches, 994 F.2d* at 740.

Clear evidence, nearly all of which is in Respondents' sole possession and available only through discovery, must be presented by the party seeking to complete or supplement the AR. *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1275 (D. Colo. 2010). For *completing* the AR with documents that were not included in the AR, the Court reviews evidence of: "(1) when the documents were presented to the agency; (2) to whom; (3) and under what context" and that they were directly or indirectly considered by the relevant decisionmakers. *Id.* "[T]he Tenth Circuit has endorsed various justifications for *supplementing* the record." *TransWest Express LLC*

*v. Vilsack*, 2021 WL 3630956, at *1 (D. Colo. July 7, 2021) (emphasis supplied). Circumstances where the AR may be *supplemented* include: the AR does not adequately explain the decision; the agency ignored relevant factors; the reviewing court needs more evidence to enable it to understand the issues; "evidence coming into existence after the agency acted demonstrates the actions were right or wrong." *Id*. *quoting Custer Cnty.,* 256 F.3d at 1028 n.1 (10th Cir. 2001).

When the AR submitted by an agency omits documents that were before the agency at the time of its decision, a court may order the agency to refile a complete administrative record. *Water Supply & Storage Co. v. U.S. Dep't of Agric*., 910 F. Supp. 2d 1261, 1265 n.4 (D. Colo. 2012) (citation omitted). Courts may also grant leave to conduct discovery for the purposes of delineating the administrative record. *Colo. Envtl. Coal. v. Office of Legacy Mgmt*., 2010 U.S. Dist. LEXIS 7184, at *9 (D. Colo. Jan. 14, 2010) (holding that "discovery is appropriate to determine what deficiencies exist in the administrative record"); *Bar MK Ranches*, 994 F.2d at 740 (holding when a record is shown as incomplete, limited discovery is appropriate).

When it is obvious that an AR did not exist at the time of the decision, instead of building an AR and judicial record through discovery and motions practice, the agency action is properly set aside. *Olenhouse*, 42 F.3d 1560, 1556 (10th Cir. 1994) (failure of a district court to base judicial review on "the administrative record" and the grounds set forth by the agency during the administrative proceeding constitutes "prejudicial error"). Setting aside the agency action based on AR deficiencies is analogous to a Court of Appeals setting aside a District Court ruling and remanding for a new trial to avoid an "overwhelming temptation to engage in post hoc rationalization." *Dodge v. Cotter Corp*., 328 F.3d 1212, 1229 (10th Cir. 2003) accord *High Country Conservation Advocates v. U.S. Forest Serv*., 67 F. Supp. 3d 1262, 1265 (D. Colo. 2014) ("NEPA's goals of

deliberative, non-arbitrary decision-making would seem best served by the agencies approaching these actions with a clean slate.”).

## III. ARGUMENT

Petitioners forward three categories of argument. The first addresses the irregularities and inadequacies in the AR that expose clear error and rebut the presumption of regularity. The second addresses *post hoc* materials that were inappropriately included in the AR. The last addresses Petitioners’ ability to complete the AR and/or supplement with extra-record evidence. Petitioners’ contend that the extreme aberrations in record retention and compilation during litigation are appropriately corrected by setting aside all agency actions the Amended Complaint challenges. Alternative remedies are also discussed and requested herein.

### A. Clear Evidence of Irregularity and Inadequacies in the Salter Project AR Rebuts the Presumption of Regularity.

The AR regularity presumption may be overcome by showing, “‘among other things, [that] defendants applied the wrong standard’” when initially compiling the administrative record. *Pitman*, 2018 WL 3232355 at * 3 (citation omitted). There are at least three ways in which the wrong standard was employed in AR maintenance/compilation, and clear evidence rebuts the regularity presumption.

#### 1. Portions of the AR were Deliberately Deleted

Petitioners provide clear evidence that agency resource specialists on the NEPA Interdisciplinary Team (“ID Team”) were advised on July 6, 2021 that six categories of documents “should be deleted prior to finalization of the project record.” Ex. 2 at 7-8 (email sent by Jodi Leingang, the Environmental Coordinator/Project Manager for the Forest Service Washington D.C. Office’s Business Operations, Enterprise Program). Materials identified for deletion included: 1) drafts of any documents not shared with the public during comment periods; 2) comments on internal drafts, informal notes of

meetings, personal notes; 3) internal emails; 4) GIS data that was not used or was superseded; 5) raw data, such as for wildlife surveys; and 6) internal fiscal documents. *Id*.

Ms. Leingan's categorical instruction to delete all drafts "except drafts that were shared with the public during comment periods" prevents inquiry into whether the drafts actually functioned as a final decision when viewed in context of the administrative proceedings*. United States Fish & Wildlife Serv. v. Sierra Club, Inc*., 141 S. Ct. 777, 788 (2021) (distinctions between draft and final "is a functional rather than formal inquiry").

Destruction of agency records involving "'informal, preliminary internal deliberations" prevented review by the Department of Justice, which has a duty to prepare and submit a privilege log to meet the agency burden to demonstrate that such documents qualify for deliberative process privilege. *Save the Colo*, 2023 WL 2402923 at *4-*5 (requiring a privilege log). Instructing ID Team members to delete materials based on their personal view of what constitutes informal, preliminary internal deliberations" (Ex. 2 at 8) also prevents Petitioners from contesting assertions of privilege based on review of a privilege log. *Bar MK Ranches, 994 F.2d* at 740 ("An agency may not unilaterally determine what constitutes the [AR]").

Petitioners can find no caselaw that categorically allows exclusion and deletion of all "internal emails." Ex. 2 at 8. Instead, APA caselaw regularly relies on internal emails. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. United States Dep't of Agric.*, 35 F.4th 1225, 1235 (10th Cir. 2022) (approving supplementation of administrative record with "additional emails"); *W. Energy All. v. Biden*, 2022 U.S. Dist. LEXIS 171160, at *25 (D. Wyo. Sep. 2, 2022) (facts regarding agency actions were "confirmed internally via email"); *Rocky Mt. Wild v. Dallas*, 636 F. Supp. 3d 1289, 1307 (D. Colo. 2022) (relying on internal emails to set aside agency action); *Colo. Wild, Inc. v.*

*United States Forest Serv*., 523 F. Supp. 2d 1213, 1230 (D. Colo. 2007) (relying on internal emails to establish "improper influence […] and resulting contractor bias.").

Similarly, Petitioners can find no caselaw that allows exclusion of data and computer runs other than those used in the final decision. Ex. 2 at 8. The exclusion/destruction of data and computer runs effectively sanitizes the record to highlight only the data and computer runs that support the decision. *Olenhouse*, 42 F.3d 1560, 1574 (10th Cir. 1994) (AR cannot be so limited as to "shield [the agency's] action from a thorough, probing, in-depth review").

The deletion of the extremely vague fifth category (Ex. 2 at 8), "internal fiscal documents" (ex. 2 at 8), is potentially relevant to the expenditure of Collaborative Forest Landscape Restoration Program ("CFLRP") funds.16 U.S.C. § 7303, Ex. 5 at 4-6. The proposed Amended Complaint addresses the interplay between CFLRP's substantive provisions, funding, and NEPA procedures. ECF 22-2 at ¶¶ 7-9, 68, 142-152 (Claim 8).

Here, agency personnel were directed to delete specific materials that existed at the pre-decisional objections phase and apparently acted accordingly. Ex. 2 at 8. This clear evidence confirms that there can be no presumption of regularity in the AR or the decision, probing APA review cannot be carried out on the whole record, and the agency actions cannot be upheld. *Olenhouse*,42 F.3d at 1583 ("Agency action will also be set aside if the administrative process employed violated basic concepts of fair play.") (internal quotations omitted). Judicial resources may be conserved by setting aside the agency actions based solely on Ms. Leingang's July 6, 2021 instruction to destroy relevant agency records. Ex. 2 at 7-8.

### 2. Only "Relevant" portions of the AR Were Produced

The AR includes only those "relevant records as retained in the Forest Service's files" at some unspecified time after the complaint was filed. ECF 13-1 at ¶3. Instead of evidence of whether all records considered by the decisionmakers was included, Ms.

Sara Brinton used a relevance test and then included only those records that she deemed "responsive to the allegations contained in" Petitioners' complaint. *Id*. at ¶2.

There is no basis for limiting the administrative record to those documents unilaterally deemed relevant (*id*. at ¶3) by an agency staffer with no demonstrated connection to the decisionmaking process. *Bar MK Ranches*, 994 F.2d at 740. Nor is it appropriate to assemble an administrative record in response to a Complaint where there is no evidence of the contents of any "administrative record as it existed before the agency." *Olenhouse*, 42 F.3d at 1576; *Camp*, 411 U.S. at 142. The filing of a second declaration that opted for different wording, ECF 23-1, does not change the undisputed facts regarding the sanitized and *post hoc* compilation of the filed AR. ECF 13-1.

While Ms. Brinton parrots the requirement that the AR must contain "all documents and materials directly or indirectly considered by agency decision-makers for the Project," the sections below confirm that Ms. Brinton's AR compilation during this litigation omitted multiple documents that were directly or indirectly considered while including numerous documents that post-date the challenged November 18, 2021 decision. True and correct copies of documents confirming AR omissions and an index of post-decision materials included in the AR are proffered by the Declaration of John Rader. Exs. 1-7.

Ms. Brinton's Complaint-based compilation of the AR during this litigation confirms that "defendants applied the wrong standard." *Pitman*, 2018 WL 3232355 at * 3 (D. Utah 2018). The irregularities flowing from this error are prejudicial and irreparable.

### 3. A Privilege Log was Not Provided

There is no information to allow the Court or Petitioners' to assess the appropriateness of withholding any purportedly privileged information. Under certain circumstances, privileged information may be withheld from the AR filed with the court, but a privilege log must identify the basis, and describe the withheld information. *Save*

*the Colo.*, 2023 WL 2402923 at *4-*5 (reviewing caselaw). "[T]he growing consensus among district courts supports Petitioners' position that agencies must submit a log if they withhold privileged materials from an AR." *Id.* at *4.

The AR and supporting materials do not contain or identify documents the agency may have considered, but withheld based on some privilege. ECF 13 *et seq.* During conferral, Respondents asserted that any privileged materials need not be addressed because any privileged information would "fall outside the scope of the administrative record as a matter of law." Ex. 2 at 11-12 (arguing a log is not needed because the documents an agency declares privileged "are not properly part of the Administrative Record in the first instance"). This impenetrable tautology—documents considered by the decisionmaker are not in the AR because the agency claimed privilege *sub silentio*—contradicts 10th Circuit precedent. *Bar MK Ranches*, 994 F.2d at 740 ("An agency may not unilaterally determine what constitutes the [AR].").

The AR index, on its face, suggest that only a single document in the AR was subject to redactions/withholding. ECF 13-2 at 13. Because this document was properly identified in the AR as involving sensitive archaeological information and therefore subject to redaction per 16 U.S.C. § 470hh, there is a presumption that it was an appropriate redaction. By contrast, there are no other acknowledgements in the AR index that any other information was withheld in full or in part, and similarly, there is no rationale for any withholding. The D.C. Circuit has explained the role of a privilege index in FOIA cases to remedy practices that would "foster inefficiency and create a situation in which the Government need only carry its burden of proof against a party that is effectively helpless and a court system that is never designed to act in an adversary capacity." *See Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973).

The *Vaughn* analysis applies to the APA case at bar. As Judge Arguello explained, agency decision-making routinely involves materials that are properly subject

to privilege, but allowing the agency to unilaterally determine the contents of the AR without a privilege log is untenable. *Save the Colo.*, 2023 WL 2402923 at *4-*5 (reviewing caselaw).

Consistent with *Vaughn*, 10th Circuit precedent does not allow the agency to "unilaterally determine what constitutes the [AR]" by silently excluding documents it deems privileged. *Bar MK Ranches*, 994 F.2d at 740 *accord Olenhouse*,42 F.3d at 1583 (APA review considers whether the "administrative process employed violated basic concepts of fair play."). Here, the agency unilaterally sanitized the AR by using legal tautologies to withhold whole documents without providing any justification, and without establishing whether there were segregable portions that are not privileged. Ex. 2 at 3-4. The result is fundamentally unfair to Petitioners.

**4. *Post hoc* information Must be Stricken from the AR**

Further evidence confirms the AR does not warrant a presumption of regularity. *Bar MK Ranches, 994 F.2d* at 740 (citation omitted). Clear evidence in the AR itself confirms there are over 600 pages of materials that post-date the November 18, 2021 issuance of the DN/EA/FONSI. Ex. 3 (index of post-decision documents). These post-decision materials range from being created shortly after the DN/EA/FONSI was issued (*e.g.* ECF 14-2 at 52-56, dated December 8, 2021), to being electronically generated or pulled from the internet mid-September 2023. *E.g.* ECF 16-5 at 342-373, ECF 18-6 at 135-165; *see* Ex. 3. Accordingly, these materials did not exist and could not have been contained in a contemporaneously created AR because many contain information that post-dates the signed decision. Ex. 3. Their inclusion was clear error.

Several examples from Petitioners' Exhibit 3 showcase this point. First, there are nine different reports that were generated September 13 or 19, 2023 that use data from 2021, 2022, and/or 2023. ECF 16-5 at 129 to 17-1 at 18. The report titled, "A Profile of Timber and Wood Products" was generated September 19, 2023 (ECF 16-5 at 374) and

used 2023 data from the U.S. Department of Labor, as well as quarterly census employment data from 2021 and 2022. ECF 17-1 at 4: Ex. 3. Each of the eight other reports were generated shortly before the AR was filed and each contain *post hoc* information and data analysis that was not in existence when the final decision was signed. Ex. 3.

Second, various web pages and information from the internet are dated September 19 and 20, 2023, and many contain images and/or google maps that have 2022 and 2023 dates. ECF 18-6 at 120 to 19-1 at 22. These materials are generic information about species including the Olive sided-flycatcher, flammulated owl, hairy woodpecker, and hoary bat, to name a few. These documents could not have been directly or indirectly considered by the decisionmaker when issuing the DR/FONSI on November 18, 2021. ECF 16-4 at 411; Ex. 3 at 2-3.

The Tenth Circuit has held that information that post-dates the challenged project is properly stricken from the AR because "obviously, post-decisional data . . . is irrelevant to whether the Forest Service properly fulfilled [its] obligations prior to approving a particularly project." *Utah Envtl. Cong. v. Troyer*, 479 F.3d 1269, 1282 (10th Cir. 2007). Consistent with this precedent, this Court should grant Petitioners' request to strike AR materials identified in Exhibit 3 that post-date the decisions.[2]

**B. Motion to Compel Production – House Creek**

The proposed amendments to the complaint address facts and law that are closely related to the existing claims, including Respondents' award of the House Creek

[2] While Petitioners are requesting these documents be stricken from the AR, Petitioners also request they not be stricken from the Court's record. The agency inclusion of *post hoc* documents while compiling the AR during litigation is extra-record evidence going to the merits of Petitioners' claims. *See Lee v. U.S. Air Force*, 354 F.3d 1229, 1242 (10th Cir. 2004) (supplementation proper to show NEPA process "neglected to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative, or otherwise swept stubborn problems or serious criticism under the rug.").

timber sale contract that implements the Salter Project was issued without site-specific NEPA analysis of House Creek Unit. *See e.g.* ECF 22-2 at ¶¶4, 6, 68, 86-87. Respondents have not agreed to produce an administrative record regarding the House Creek timber contract, which is an additional final agency action implementing the Salter Project and the Forest Plan. Ex. 2 at 12. Timber sales are agency actions that have long been subjected to APA review. *See e.g. Friends of the Bow v. Thompson,* 124 F.3d 1210, 1217 n.2 (10th Cir. 1997) (NEPA and NFMA decisions may be "challenged at the time of a particular implementation decision, such as the sale at issue here."); *Ayers v. Espy*, 873 F. Supp. 455, 470 (D. Colo. 1994) ("enjoining the implementation of the Long Draw timber sale").

Information gained during conferral suggest the Respondents did not maintain an AR when awarding the House Creek timber contract, and therefore no AR exists. Ex. 2 at 12. Yet additional agency decision-making and considerations were required for the preparation and award of the House Creek timber sale contract, and thus presumably materials exist that would constitute an AR. *See* Ex. 4 (materials for House Creek). Alternatively, and accepting Respondents' representation that no AR was maintained, Petitioners respectfully request that Respondents be compelled to produce and file all House Creek and other sale-tier Salter Project records with the Court as extra-record evidence regarding the use of a three-tiered NFMA decisionmaking process, that relied on a two-tiered NEPA process. *Lee v. U.S. Air Force*, 354 F.3d1242 (10th Cir. 2004), *e.g*. ECF 22-2 at ¶3-6, ECF 1 at ¶¶ 12, 33 ("Ending the NEPA process at the project tier prevents Plaintiffs from providing comments on decisions that have been deferred to the timber contracting tier of the Salter Project.").

**C. Motion to Compel Production - CFLRP Amendments**

Similarly, Respondents refused to identify any agency records regarding the CFLRP. The allegations and Claim 8 are responsive to information Petitioners learned

when reviewing information contained in the AR. ECF 22-2 at ¶¶ 7-9, 68, 142-152 (Claim 8). Adding these allegations and claims are analogous to the typical civil plaintiff who seeks to amend the complaint and gain additional information based on what was learned during initial disclosures. Fed.R.Civ.Pro. 26.

There is no dispute that the whole AR was not produced. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U. S. 402, 420 (1971) (the "whole record" means "the full administrative record that was before the Secretary at the time he made his decision."). The AR that Respondents filed with the Court is a *post hoc* compilation based on what Ms. Brinton determined was relevant and "responsive to the allegations contained in" Plaintiff's complaint. ECF 13-1 ¶2-3. CFLRP-based allegations were not contained in the original complaint that Ms. Brinton used to compile the AR.

Some meeting notes and a partial set of documents related to the CFLRP-based collaboratives were included in the Salter Project AR. *See e.g.* ECF 14-1 at 1, 14-1 at 108. CFLRP documents that are relevant to Respondents' preparation and implementation of the Salter Project are contained on the CFLRP website, but are not contained in the AR. https://www.fs.usda.gov/restoration/CFLRP/index.shtml, *see also*, Ex. 5 (2002 CFLRP Report for San Juan National Forest). Whether through discovery or another means, the AR must contain all agency records relevant to the DWRF and other Forest Service collaborative processes: used to consider CFLRP criteria, used as part of CFLRP processes, and determined the Salter Project is eligible for CFLRP funding. This request is consistent with the widely held understanding by the agency and collaborators that the Salter Project is "shovel-ready" and "NEPA-ready for CFLRP purposes." *See e.g*. ECF 14-1 at 8-9 (discussing CFLRP funding and formation of an "advisory committee as well"). Several maps show how CFLRP is being implemented in the Salter project area. Ex. 5 at 3, 10-11, 14. Funding of timber sale contracts and other activities is also addressed. *Id*. at 6.

The Salter Project appears inseparable from CFLRP, but Respondents refuse to add any CFLRP documents to the AR. Ex. 2 at 4. Petitioners respectfully request that the Court grant leave for Petitioners to conduct discovery, and to renew its motion to supplement concurrently with filing its opening merits brief. *See Colo. Wild, Inc. v. U.S. Forest Serv.* 2007 U.S. Dist. LEXIS 83638, at *6 (D. Colo. 2007).

**D. Motion to Complete with Missing Records – FOIA Production**

Petitioners proffer information to show that over 5,000 documents produced in Freedom of Information Act ("FOIA") responses to FOIA requests seeking information on the Salter Project were not included in the AR. *See* Ex. 6 at 2, 4, 6. The FOIA requests produced more than 5,620 agency records relevant to the Salter Project. *Id*. The AR Index contains a mere 270 documents. ECF 13-2.

Respondents' insist that the documents deemed relevant pursuant to FOIA were not considered and that Petitioners cannot meet the burden to show they must be included to complete the AR. Ex. 2 at 10-11. Instead of discovery and lengthy motions practice, Petitioners propose that all agency responses and agency records responsive to FOIA Requests involving the Salter Project be deemed admissible as AR supplements during merits briefing pursuant to the NEPA exception. *Lee v. U.S. Air Force*, 354 F.3d 1229, 1242 (10th Cir. 2004). Alternatively, Petitioners seek leave to supplement, after conducting discovery regarding whether "agency decisionmakers considered, directly or indirectly" the agency records Petitioners obtained via FOIA requests. Ex. 2 at 3; *Colo. Envtl. Coal. v. Office of Legacy Mgmt.*, 2010 U.S. Dist. LEXIS 7184, at *9 (D. Colo. Jan. 14, 2010) (holding that "discovery is appropriate to determine what deficiencies exist in the administrative record").

**E. Motion to Compel/Complete – Studies and Data**

Information from scientific studies and other agencies is referenced in materials included in the AR, but the documents themselves are excluded from the AR. For

example, key studies summarized in Dr. Remke's review of scientific literature before the DWRF collaborative during NEPA scoping (ECF 14-1 a 56-94) were not included. *E.g.* Ex. 7 at 2 (Baker and Williams (2015)), *id*. at 9 (Gehring, et al (2017)), *id*. at 15, (Bryant et al (2019)). Although important to the DWRF collaborative participants, these articles were not included in the AR, and appear to have been ignored in by agency's NEPA process. The DR/EA/FONSI states that "the Interdisciplinary Team" reviewed a 2021 research paper by Dr. William Baker, *Restoration of forest resilience to fire from old trees is possible across a large Colorado dry-forest landscape by 2060, but only under the Paris 1.5℃ goal.* ECF 16-4 at 398 Ex. 7 at 74 (Baker 2021). Yet, this paper is not in the AR, even though clear evidence establishes it was directly considered. *Compare id. with* (DR/FONSI) to ECF 13-2 (AR index). Documents regarding the decline in Southwest Colorado's deer and elk herds were also excluded. Ex. 7 at 29.

The omission of key information that was presented during the NEPA process appears to flow from a sanitized and *ad hoc* AR compilation. ECF 13-1 at ¶2; ECF 26-21 at ¶2. Although the circumstances warrant discovery and AR completion or supplementation, as set out above, the deficiencies are prejudicial and warrant an order setting aside the Salter Project and related agency actions.

## IV. CONCLUSION

Petitioners have proffered evidence showing the whole AR was not filed with the Court, and have provided clear evidence overcoming the presumption of regularity that is otherwise afforded to ARs prepared pursuant to the correct standards. Petitioners respectfully request the AR deficiencies be remedied as discussed herein, but respectfully submits that the deficiencies warrant setting aside the agency actions.

**RESPECTFULLY SUBMITTED, November 30, 2023**

*s/Travis E. Stills*
Travis E. Stills
Energy & Conservation Law
227 E. 14th Street #201
Durango, Colorado 81301
(970) 375-9231
stills@eclawoffice.org

*Attorney for Petitioners*

John W. Rader
San Juan Citizens Alliance
1309 E. 3rd Ave #5
Durango, CO 81301
(970) 259-3583
john@sanjuancitizens.org

*Attorney for Petitioner San Juan Citizens Alliance*

Allison N. Henderson
Center for Biological Diversity
P.O. Box 3024
Crested Butte, CO 81224
(970) 309-2008
ahenderson@biologicaldiversity.org

Edward B. Zukoski
Center for Biological Diversity
1536 Wynkoop Street, Suite 421
Denver, CO 80202
(303) 641-3149
tzukoski@biologicaldiversity.org

*Attorneys for Petitioner Center for Biological Diversity*