# EXHIBIT 2

***Energy & Conservation Law***
*a public interest environmental law firm*

*227 E. 14th Street, # 201*
*Durango, Colorado 81301*

*Phone: (970) 375- 9231*
*Email: stills@eclawoffice.org*

November 8, 2023

Emma L. Hamilton, Trial Attorney
United States Department of Justice
Natural Resources Section
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
Phone: (303) 844-1361
emma.hamilton@usdoj.gov

**RE: Conferral on Administrative Record Deficiencies and Irregularities, *San Juan Citizens Alliance, Center for Biological Diversity v. Derek Padilla, David Neely, US Forest Service, USDA,* 23-cv-1501-REB.**

Dear Emma,

Below is a list of concerns and deficiencies Plaintiffs have identified with the Administrative Record filed with the Court. We look forward to addressing each in order to avoid or minimize motions practice, which in this case may involve Plaintiffs' discovery.

**Applicable Standards**

During Administrative Procedure Act litigation, a district court reviews an agency action based on the full administrative record (not merely on agency records deemed relevant by the agency), which "consists of all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches v. Yuetter,* 994 F.2d 735, 739 (10th Cir. 1993). "The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "An agency's decision is entitled to a presumption of regularity, ''but that presumption is not to shield [the agency's] action from a thorough, probing, in-depth review.'" *Colo. Wild, Inc. v. U.S. Forest Serv*. 2007 U.S. Dist. LEXIS 83638, at *6 (D. Colo. Nov. 1, 2007) quoting *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1574 (10th Cir. 1994) (citations omitted).

When an Administrative Record ("AR") already exists that documents the agency action, "the designation . . . is entitled to a presumption of administrative regularity." *Bar MK Ranches* at 740 (citation omitted). Even when the presumption applies, it can be overcome by showing, "'among other things, [that] defendants applied the wrong standard'" when initially compiling the administrative record. *Pitman v. U. S. Citizenship and Immigration Services*, 2018 WL

3232355 * 3 (D. Utah July 2, 2018) (citation omitted). "[T]he growing consensus among district courts supports Petitioners' position that agencies must submit a log if they withhold privileged materials from an AR." *Save the Colo. v. Spellmon*, 2023 U.S. Dist. LEXIS 38935, at *12 (D. Colo. Mar. 7, 2023) (reviewing caselaw).

When the administrative record submitted by an agency omits documents that were before the agency at the time of its decision, a court may order the agency to refile a complete administrative record. *Water Supply & Storage Co. v. U.S. Dep't of Agric.*, 910 F. Supp. 2d 1261, 1265 n.4 (D. Colo. 2012) (citation omitted). Courts may also grant leave to conduct discovery for the purposes of delineating the administrative record. *Colo. Envtl. Coal. v. Office of Legacy Mgmt.*, 2010 U.S. Dist. LEXIS 7184, at *9 (D. Colo. Jan. 14, 2010) (holding that "discovery is appropriate to determine what deficiencies exist in the administrative record").

**Conferral Subjects**

Based on the above standards, Plaintiff would like to propose discussing several specific categories of documents in hopes of avoiding administrative record motions and discovery.

- The AR includes only those "relevant records as retained in the Forest Service's files." ECF 13-1. Relevance was determined by Sara Brinton as those records that are "responsive to the allegations contained in" Plaintiff's complaint." As stated above, however, it is a not appropriate nor is there is any basis for limiting the record to those documents deemed relevant. The record is the whole record considered by the decisionmaker. Potential remedies include refiling the whole record or AR discovery to determine and remedy the deficiencies.

- Document destruction and failure to ensure record retention may prevent the compilation of the whole administrative record, thereby preventing the Department of Justice from defending the agency actions. For example, on July 6, 2021, Jodi Leingang, (Environmental Coordinator/Project Manager, Forest Service WO, Business Operations, Enterprise Program) sent an email for the purposes of gathering a limited set of documents from the ID Team, Ex. 1. The email attachment gave direction to delete and destroy a variety of records. *Id.* at 2 ("Documents and data that are not relevant to the decision or that were drafts should be deleted prior to finalization of the project record.").

  Discovery may be required to ascertain the deficiencies in the administrative record based on the actions taken in response to the email, and similar actions based on similar misunderstandings of administrative record duties. Record destruction has caused the Department of Justice to abandon the defense of other Forest Service project decisions. *See Colo. Wild, Inc. v. U.S. Forest Serv.* 2007 U.S. Dist. LEXIS 83638, at *6 (D. Colo. Nov. 1, 2007).

- Documents produced in Freedom of Information Act Responses, including a significant number of emails and other agency records, were not included in the AR. See FOIA Tracking Number 2022-FS-R2-02232-F. In order to remedy this deficiency, Plaintiffs proposes that Defendants move to include all agency responses and agency records responsive to FOIA Requests involving the Salter Project in the Administrative Record. Alternatively, Plaintiffs would seek to supplement, informed by the results of discovery about these AR deficiencies. Plaintiffs' preference would be that Defendants, with oversight of the Department of Justice and participation of the agency decisionmakers, revisit the decision to largely exclude thousands of documents produced during FOIA responses.

- The Administrative Record does not appear to contain documents the agency may have considered, but excluded as potentially subject to various litigation privilege. The AR filing does not adhere to "the growing consensus among district courts [that] supports Petitioners' position that agencies must submit a log if they withhold privileged materials from an AR." *Save the Colo. v. Spellmon*, 2023 U.S. Dist. LEXIS 38935, at *12 (D. Colo. Mar. 7, 2023) (reviewing caselaw). It appears that whole documents have been withheld with no assessment or justification that there are no segregable portions that could and would need to be disclosed.

- An additional AR will be required for the preparation and award of the House Creek timber sale contract. The agency presumably created and retained a project record that may be filed with the court as a ministerial act, similar to the procedure used by District Courts to file its record with the Court of Appeals. If this is not the case, the process for establishing the House Creek AR should be discussed.

- It is unclear whether a distinct AR for CFLRP-based Claim 8 exists. The DWRF meeting notes and a partial set of documents related to the collaborative were included in the Salter Project AR. CFLRP documents that are relevant to Defendants' preparation and implementation of the Salter Project are contained on the CFLRP website, but not the AR. https://www.fs.usda.gov/restoration/CFLRP/index.shtml . Whether through discovery or another means,all agency records relevant to the DWRF and other Forest Service consideration of CFLRP criteria, use of CFLRP processes, and use of CFLRP funds for Salter Project approval and implementation must be included in the AR, or provided to the Court as extra-record supplementation. This request is consistent with the widely held understanding by the agency and collaborators that the Salter Project is "shovel-ready" and "NEPA-ready for CFLRP purposes." *See e.g.* FS-000142-1433 (discussing CFLRP funding and formation of an "advisory committee as well"). An example map shows numerous "CFLRP Proposed Timber Projects" on the Salter project area.




The Salter Project appears inseparable from the CFLRP, but there is no NEPA analysis of the CFLRP criteria or CFLRP-compliant alternatives. The Southwest Colorado CFLRP Proposal on the agency website states, "The local timber industry has two new local mills and another in the region very interested in forest products from the CFLRP area." The proposal also states that, "Across the Southwest Colorado CFLRP boundary, there are over 700,000 acres of NEPA-ready projects available to implement." The proposal further states, "This includes over 100,000 acres of timber management encompassing the full range of silvicultural prescriptions." Plaintiffs are willing to discuss the most efficient means of establishing a judicial record regarding Claim 8.

- Similarly, peer reviewed science regarding forest restoration that was discussed by the DWRF are not included in AR and there is little scientific information regarding pre-suppression diameter distribution, although this was discussed extensively in the DWRF. For example, Dave Casey's presentation to the DWRF collaborative that states 0.02% of project area trees are greater than 26. ECF 14-2 at 14. However, the supporting materials are not in the AR. It is obvious that the Forest Service relied on these supporting documents, even if they did not get addressed in the NEPA documents. The inclusion of some, but not all, scientific studies in the AR appears to flow from Sara Brinton's

compilation of the AR based on what she deemed "responsive to the allegations contained in the petition." ECF 13-1 at ¶2.

As we discussed, Plaintiffs are quite interested in supporting projects that meet CFLRP's restoration criteria, but nothing in the AR suggests criteria deemed quite important by the DWRF collaborators informed the NEPA analysis used to approve the Salter Project. Motions practice or discovery may be necessary to establish deficiencies in the AR regarding DWRF proceedings and Defendants' consideration of the CFLRP criteria while analyzing the Salter Project, but Plaintiffs are willing to discuss other options.

We appreciate the opportunity to confer on these concerns regarding the AR, and hope that they can be resolved without motions practice and/or discovery. As we discussed in person, settlement remains a very attractive option for Plaintiffs, and resolving Plaintiffs' AR concerns may also help move settlement forward in tandem with the litigation. In order to adhere to the existing schedule, Plaintiffs propose a call this week to discuss and perhaps clarify these concerns, and map a way forward.

Sincerely,

*s/Travis E. Stills*

Travis E. Stills
Allison N. Henderson
Edward B. Zukoski
John Rader

Counsel for Plaintiffs

**From:** Leingang, Jodi -FS
**Sent:** Tuesday, July 6, 2021 5:21 PM
**To:** Casey, David -FS; Chmelir, John - FS; Jensen, Shauna -FS; Jones, Cody -FS; Kochanski, Tom- FS; Messinger, Ivan -FS; Padilla, Derek -FS; Rice, Thomas -FS; Yemma, Angela - FS; Young, Tiffany -FS
**Subject:** Call for All Salter Official Project Records
**Attachments:** Appendix A - Records Quick Guide.docx

**Importance:** High

Hello Salter IDT!

As you know, the Salter Final EA and Draft DN/FONSI are out for objection beginning June 23 for 45 days. That being said, I am making another call for all of your project records. Amy has created a folder for you to file all of your relevant documents for incorporation into the final record and associated index. As of this time, there are very few records there. The ToBeFiled Folder is located here: https://usfs.app.box.com/folder/135428245456. Please place your documents here as soon as possible. In the event we are objected we want to have everything ready to convert to an administrative record as quickly as possible. I have attached a quick guide to this email as a reminder of what should be in the official record.

Thank you for your immediate attention to this! Let me know if you have any questions.
Jodi

**Jodi Leingang**
**Environmental Coordinator/Project Manager**
**Forest Service**
**WO, Business Operations, Enterprise Program**
**p: 509-930-4014**
jodi.leingang@usda.gov
10237 Hwy 12
Naches, WA 98937
www.fs.fed.us
**Caring for the land and serving people**

# Appendix A: Project Record Quick Reference

A. **NEPA Documents**
   - Legal Notices of the decision
   - Cover letter(s) and mailing list for the final documents
   - Final versions of the analysis document (e.g., EIS, EA, or CE)
   - Record of Decision (EIS), Decision Notice and FONSI (EA), or Decision Memo (CE)
   - Response to Comments documents that are not in the final analysis document

B. **Specialist Reports and Supporting Documents**
   - Divided into sub-sections for each of the relevant resource areas
   - Specialist reports, field notes, maps, resource photos, etc.

C. **Administrative Review Period Documents**
   - Objections received
   - Objection Tracking Form
   - Agency responses to objections or documentation of resolutions

D. **Public Involvement**
   - This section is divided into subsections and contains documents from the designated public involvement periods, as well as any communications that occur outside of these designated periods.

E. **Interagency Communication**
   - Any correspondence or documentation of meetings with other agencies (including both cooperating and regulatory agencies)

F. **Process Documentation and Meeting Notes**
   - Project Initiation Letter (PIL)
   - Pertinent documents from pre-NEPA analysis
   - Notes from IDT meetings and other items that document the process

G. **Management Direction**
   - Relevant policies, planning documents, or guidance letters from the national, regional, forest, or district level

H. **References**
   - Studies, research, papers, etc. that were considered directly or indirectly

I. **Documents Not Included in the Project Record**
   - Sometimes there are documents that are used in the planning process that have some initial value as background or historical information, but because they are preliminary, redundant, or not useful to the decision to be made; they are not relevant to the line officer's decision. Documents and data that are not relevant to the decision or that were drafts should be deleted prior to finalization of the project record. Such documents may include:
     - Drafts of any documents (except drafts that were shared with the public during comment periods, these are relevant to show what information was presented to the public at the different stages of the process).
     - Informal, preliminary internal deliberations (e.g. comments on internal drafts, informal notes of meetings, personal notes).
     - Internal emails (except when they demonstrate resource analysis that was not otherwise incorporated or addressed in other project record documents).
     - Computer runs that were not used in the final decision-making process (e.g. GIS data that was not used or was superseded).
     - Raw data, such as for wildlife surveys, since this data should be interpreted in a final report.
     - Internal fiscal documents.

**U.S. Department of Justice**

Environment and Natural Resources Division

ELH
90-1-4-17163

***Denver Field Office***
***999 18th Street***
***South Terrace, Suite 370***
***Denver, CO 80202***

***Telephone (303) 844-1899***
***Facsimile (303) 844-1350***

***** CONFIDENTIAL SETTLEMENT COMMUNICATION SUBJECT TO FRE 408 *****
**DO NOT DISCLOSE OR DISSEMINATE**

November 20, 2023

Travis E. Stills
Allison N. Henderson
John Rader

*Via Electronic Mail*

Re: Response letter regarding the Administrative Record in *San Juan Citizens Alliance v. Padilla*, No. 23 cv-1501

Dear Counsel:

Thank you for your November 8, 2023 letter listing Plaintiffs' concerns with and requests to add materials to the Forest Service's Administrative Record for this case, which the agency lodged on September 29, 2023 (ECF Nos. 13-20). Below please find Federal Defendants' responses to each category of documents listed in your letter:

- **Completeness of the Record.** An administrative record consists of all documents and materials directly or indirectly considered by agency decision-makers. *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993). And an agency's certified administrative record is entitled to a "presumption of regularity." *Citizens for Alternatives to Radioactive Dumping v. DOE*, 485 F.3d 1091, 1097 (10th Cir. 2007); *see also Bar MK Ranches*, 994 F.2d at 740. Unless a plaintiff can demonstrate through "clear evidence" that the record is not adequate to permit "meaningful judicial review," courts defer to the agency's certification of the administrative record. *Franklin Sav. Ass'n v. Office of Thrift Supervision,* 934 F.2d 1127, 1138-39 (10th Cir. 1991).

  In response to the concern raised in your letter, the Forest Service has confirmed that it compiled the Administrative Record for this case using the standard described above.

The use of the terms "relevant" and "responsive" in the Certification of the Administrative Record, ECF No. 13-1, was simply intended identify documents that met the criteria for inclusion in the Administrative Record, *i.e.*, materials that were directly or indirectly considered by agency decisionmakers. Descriptions of the Administrative Record materials as "relevant" or "responsive" to Plaintiffs' Complaint was not intended to suggest that the standard for compilation of the Record was improperly limited or the Record is incomplete. And indeed, "no standard or pattern certification language has been established with respect to administrative records; all that is presently required is a "'[p]roper certification' that the record is complete[.]" *Kiakombua v. McAleenan*, 2019 WL 4051021, at *1-2 (D.D.C. 2019) (quoting *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019)).

The Forest Service will file a revised Certification of the Administrative Record to clarify that the Record is complete and avoid any ongoing concerns based on the wording in the Certification of the Administrative Record.

- **Allegations of document destruction.** As described above, the certified Administrative Record is the complete Record for the Forest Service's decision approving the Salter Project. The email and attachment referenced in your letter (and attached to your letter as Exhibit 1) do not direct the agency to "delete and destroy" agency records. Rather, the email reminds relevant agency personnel to place documents for the Salter Project in the Project Record. This email attaches a reference document that provides more detail regarding which documents to include and which documents to not include in the Project Record. "Deletion" of materials in this context refers to their exclusion from the Project Record, not the destruction of any federal records that the agency is required by law to retain.

  There is "a strong presumption against discovery in administrative proceedings" because it creates a *de novo* record in the trial court. *Conservation Force v. Salazar*, No. 1:10-cv-1262 BJR, 2012 WL 11947683, *6 (D.D.C. Feb. 6, 2012); *see also NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 195 (3rd Cir. 2006) (noting the "strong presumption against discovery"); *Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 444 (7th Cir.1990) ("only in an emergency should a reviewing court . . . conduct its own evidentiary hearing"). Before a court may consider allowing discovery, a plaintiff must show by clear evidence that the record before the court is inadequate. *See Bar MK Ranches*, 994 F. 2d at 740 (holding plaintiffs failed to overcome the presumption of regularity, and noting limited discovery to complete the record is appropriate only after a plaintiff presents "clear evidence" the record is not complete). Discovery is not appropriate in this case, and Plaintiffs have not presented any clear evidence that the Record is incomplete.

- **Materials contained in FOIA responses.** Federal Defendants will not agree to add all documents produced through FOIA to the Administrative Record. "A FOIA production request is an entirely discrete legal concept that bears no relation to the administrative record compiled for a court's review under the APA." *Yellowstone to Uintas Connection v. Bolling*, No. 4:20-CV-00192-DCN, 2021 WL 5702158, at *7 (D. Idaho Dec. 1, 2021).

  To succeed on a motion to complete the record, a plaintiff "must show by clear evidence that the record fails to include documents or materials considered by [the agency] in

reaching the challenged decision." *WildEarth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1253 (D. Colo. 2010). A plaintiff cannot carry this "sizeable burden" by "asserting, speculatively, that documents were relevant or before the agency at the time it made its decision." *Id.* at 1254. Instead, a plaintiff bears the burden of clearly setting forth: (1) when the documents were presented to the agency; (2) to whom; (3) and under what context." *Id.*

For these reasons, the Forest Service will not agree to Plaintiffs' blanket request to "include all agency responses and agency records responsive to FOIA Requests involving the Salter Project in the Administrative Record." However, if Plaintiffs identify specific documents they have obtained via FOIA requests that they believe agency decisionmakers considered, directly or indirectly, in authorizing the Salter Project that are not currently in the Record, the Forest Service will review such documents to determine whether they are properly part of the Record.

- **Privilege log.** The Forest Service has not asserted privilege over any materials that would otherwise be included in the Administrative Record, and thus a privilege log is not required in this case.

  While the administrative record consists of all documents and materials directly or indirectly considered by agency decision-makers, *Bar MK Ranches*, 994 F.2d at 739, internal deliberations are not themselves considered, directly or indirectly. They thus fall outside the scope of the administrative record as a matter of law. *See Friends of Animals v. U.S. Fish & Wildlife Serv.*, No. 4:18-cv-00053-DN-PK, 2019 WL 8137578, at *3 (D. Utah, Dec. 27, 2019) ("An agency is not required to assert a privilege or produce a privilege log in order to withhold pre-decisional, deliberative materials from the record."); *Fourth Corner Credit Union v. Nat'l Credit Union Admin.*, No. 15-cv-01634-RM-KMT, 2016 WL 9735755, at *2 (D. Colo. Dec. 6, 2016) (citation omitted) ("an agency's internal deliberations about the merits of matters before the agency are not properly part of an Administrative Record.").

  The D.C. Circuit and the Ninth Circuit—the only Circuit Courts to have squarely addressed the issue—have concluded that deliberative materials are outside the scope of APA review and are not part of the administrative record. In *Oceana v. Ross,* 920 F.3d 855, 865 (D.C. Cir. 2019), the D.C. Circuit held that "predecisional and deliberative documents are not part of the administrative record." *See also In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998) ("[T]he actual subjective motivation of agency decisionmakers is immaterial as a matter of law" to APA review). In July of this year, the Ninth Circuit joined the D.C. Circuit in holding that "deliberative materials are generally not part of the AR absent impropriety or bad faith by the agency." *See Blue Mountains Biodiversity Project v. Jeffries*, 72 F.4th 991, 996 (9th Cir. 2023). As the Ninth Circuit explained, "[d]eliberative documents, which are prepared to aid the decision-maker in arriving at a decision, are ordinarily not relevant to that analysis." *Id.*

  While the Tenth Circuit has not directly addressed this issue, the D.C. Circuit's and Ninth Circuit's approach is consistent with the Tenth Circuit's admonition that judicial review must be based "only on the basis articulated by the agency itself" and not its subjective internal motivations. *See Jagers v. Fed. Crop Ins. Corp.*, 758 F.3d 1179, 1185-86 (10th Cir. 2014); *Colorado Wild v. U.S. Forest Serv.*, 435 F.3d 1204, 1213 (10th Cir. 2006). In

*Colorado v. Spellmon*, a court in this District did hold that "privileged documents are not categorically excluded from the administrative record," No. 18-cv-03258-CMA, 2023 WL 2402923, at *5 (D. Colo. March 7, 2023) (citation and quotation marks omitted). However, the *Spellmon* Court noted that there was "no authority binding this Court to either order or decline to order a privilege log under the specific circumstances of the instant Motion," and conducted its survey of the relevant persuasive case law prior to the Ninth Circuit's decision in *Blue Mountains Biodiversity Project*.

At bottom, a privilege log is not required for privileged or deliberative materials that are not properly part of the Administrative Record in the first instance. *See Blue Mountains Biodiversity Project*, 72 F.4th at 997 ("Because deliberative materials are 'not part of the administrative record to begin with,' they are 'not required to be placed on a privilege log.'" (quoting *Oceana*, 920 F.3d at 865 (cleaned up)).

- **House Creek contract materials.** The Forest Service will not agree to add any materials to the Record that post-date the challenged decision, which is the Forest Service's November 18, 2021 Decision Notice. And judicial review of an agency action "is to be based on the full administrative record that was before the [agency decisionmaker] at the time he made his decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). Materials related to subsequent implementation of a decision, like materials related to the House Creek timber sale and contract that post-date and implement the Salter decision, could not have been considered by the decisionmaker and are not properly part of the Administrative Record for the challenged decision.

  The Forest Service's issuance of the House Creek timber sale contract is an implementation action, not a separate final agency action subject to separate review under the APA. *See, e.g.*, *Chemical Weapons Working Group v. U.S. Department of the Army*, 111 F.3d 1485 (10th Cir. 1997) ("[W]e . . . fail to see how the Army's decision to commence trial burns at Tooele qualifies as final agency action, . . . rather than the implementation of a 'final disposition' already made" in the earlier ROD and FEIS). As such, "[a]n additional AR . . . for the preparation and award of the House Creek timber sale contract" is neither appropriate nor required in this case.

  Federal Defendants do not dispute that additional NEPA analysis was not completed before the House Creek contract was issued and do not object to Plaintiffs citing the contract for that proposition. However, Federal Defendants will not agree to add the contract (or any documents post-dating the decision) to the Administrative Record.

- **Additional Collaborative Forest Landscape Restoration Program (CFLRP) materials.** To start, the citations in your letter (FS-000142-1433) do not appear to contain the quoted language attributed to those cites, even assuming the citation was meant to refer to FS000142-43. The Forest Service has reviewed your request to add additional CFLRP materials to the Administrative Record based on Plaintiffs' position that those materials are relevant to the Salter Project. The Forest Service has confirmed that agency decision makers did not rely on any CFLRP documents not already contained in the Administrative Record either directly or indirectly in reaching the Salter decision.

- **Additional information regarding forest restoration.** The Forest Service has reviewed your request to add additional scientific information to the Administrative Record, and

has confirmed that the literature cited in the EA and already included in the Administrative Record constitutes all data considered directly or indirectly by the agency decisionmakers at the time of the challenged decision. The 2020 CSE Stand Exam data placeholdered at FS-003851 may be responsive to Plaintiffs' inquiry about additional data. The Forest Service's understanding is that Plaintiffs already have access to this data, but it is available upon request if necessary. If Plaintiffs have examples of specific literature or other materials they believe have been improperly omitted from the Record, please provide those materials for the Forest Service to review.

Please let me know if you would like to discuss any of these topics further, or if you would like to provide any specific documents for the agency to review for possible inclusion in the Administrative Record.

Sincerely,

*/s/ Emma L. Hamilton*

Emma L. Hamilton
U.S. Department of Justice
Environment & Natural Resources Division