**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| SAN JUAN CITIZENS ALLIANCE, and CENTER FOR BIOLOGICAL DIVERSITY<br><br>Petitioners,<br><br>v.<br><br>DEREK PADILLA, et.al<br><br>Respondents. | ) ) ) ) ) ) ) ) ) ) | Case No. 23-cv-1501-REB |

**REPLY IN SUPPORT OF FIRST MOTION TO AMEND COMPLAINT**

Petitioners respectfully submit this reply supporting the amended complaint (ECF 22-2) in this Administrative Procedure Act ("APA") litigation. Fed. R. Civ. P. 15(a)(2).

**Introduction**

Respondents do not take issue with the inclusion of the House Creek timber contract in the amended complaint. ECF 24 at 1-2. Respondents instead focus on Claim 8 by presenting a thinly veiled Rule 56 merits argument that ignores the context of the complaint, misrepresents Claim 8, and relies on the disputed Administrative Record ("AR"). ECF 24. Where the opposition lacks any Rule 15 argument, this Court should reject Respondents' efforts and approve Petitioners' motion to amend.

Respondents press Rule 12(b)(6) arguments alleging futility for failure to state a claim.[1] Respondents heavy reliance on the AR presents "matters outside the pleadings" and the argument "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d), *Munsell v. Dep't of Agric.*, 509 F.3d 572, 592-93 (2007) (emphasis added). A Rule 56 motion cloaked in a Rule 15 response is precluded by Tenth Circuit

[1] The Rule 56 conversion caselaw for Rule 12(b)(1) does not apply, as no jurisdictional challenges were presented. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

APA precedent and must be denied. *Olenhouse v. Commodity Credit Corp*., 42 F.3d 1560, 1580 (10th Cir. 1994) ("motions for summary judgment are conceptually incompatible with the very nature and purpose of [APA review of agency action].") D.C.COLO.LCivR 7.1 ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document.").

This lawsuit seeks relief based on the Salter Project approval violating federal law, including the National Environmental Policy Act ("NEPA"). The new allegations and Claim 8 add factual and legal bases for relief involving the Collaborative Forest Landscape Restoration Program ("CFLRP") provisions.16 U.S.C. § 7303. The amendments provide a complimentary and/or additional basis for setting aside the Salter Project. *Id*. at ¶143; ECF 22-2 at ¶144 *citing* 16 U.S.C. § 7303(a). Claim 8's additional relief is plausible and further supports the uncontested NEPA Claims 1-7. Petitioners respectfully submit that justice would be served by granting leave to amend the complaint and directing Respondents to file an Answer. Fed. R. Civ. P. 15(a)(2).

**Factual Background**

The Amended Complaint contains key factual allegations that support plausible relief on Claim 8.[2] ECF 22-2 (amendments identified by blue font). Respondents developed the Salter Project in conjunction with various collaborative entities and without benefit of NEPA analysis of CFLRP-based management opportunities. ECF 22-2 at ¶147. Throughout the NEPA process, Petitioners promoted CFLRP-compliant alternatives based on pre-suppression old growth and large tree retention. *See e.g.* ECF 22-2 at ¶74 ("The Center requested that the SJNF analyze an alternative to protect old or large trees, based on peer reviewed scientific studies demonstrating that large and old trees are critical for ecological restoration and can increase forest resilience.").

[2] Petitioners are disputing the authenticity of the AR and have submitted evidence demonstrating that the AR was built during litigation, on incorrect standards. ECF 25.

Petitioners and others proposed restoration alternatives that parallel CFLRP criteria but were not considered in the Environmental Assessment/Finding of No Significant Impact ("EA/FONSI"). *Id*. at ¶80. ("The EA did not conduct any analysis on [the Large Tree Retention/Alternative 3 because] the only difference between Alternative 2 and Alternative 3 was a 20 inch diameter limit."). Respondents narrowed the EA in such a manner that restoration/CFLRP alternatives were avoided altogether. *Id*. at 99-101. Respondents do not provide any pinpoint cites for the proposition that the EA addresses CFLRP alternatives. ECF 24 at 9 (*citing* FS001833-1946). Petitioners have specifically alleged that the Salter Project EA does not address CFLRP-compliant alternatives. *See e.g.*, ECF 22-2 at ¶¶113, 143, 145, 151.

The Forest Service has publicly promoted the Salter Project as "NEPA Ready" for CFLRP funding. *Id*. at ¶¶7,143. Respondents have begun implementing the Salter Project through the House Creek timber contract, without carrying out site-specific NEPA analysis or otherwise considering whether the Salter Project complies with CFLRP restoration criteria. ECF 22-2 at ¶¶4,152. The Salter Project, and implementing timber sales such as the House Creek timber contract, are being funded using CFLRP funding, without addressing Congressionally-established forest restoration criteria. *Id*. at ¶8. Respondents plan to continue using CFLRP funds to implement the Salter Project. *Id*. at ¶¶8, 148. Allegations that support Claim 8 are interconnected with NEPA violations alleged in Claims 1-7,[3] particularly those alleging that "the Final EA failed to seriously consider an alternative protecting large, old trees." ECF 22-2 at ¶¶81, 90.

**Legal Standard**

Respondents do not present a Rule 15 argument based on delay or prejudice, and do not dispute the liberal pleading standards. ECF 22 at 3 citing *Minter v. Prime*

[3] Claims 1-7 are not subject to Respondents' futility argument.

*Equip.* Co., 451 F.3d 1196, 1204 (10th Cir. 2006). Denying leave to amend a potentially viable claim without a justifying reason is an abuse of discretion and inconsistent with the spirit of the Federal Rules. *Johnson v. Precythe*, 141 S. Ct. 1622, 1626 (2021).

Tenth Circuit precedent applicable to APA litigation prevents agencies from arguing that an amendment would be "futile" based on arguments that go beyond the pleadings and convert the Rule 12(b)(6) motion into a prohibited summary judgment motion. Fed. R. Civ. P. 12(d); *Olenhouse*, 42 F.3d at 1580 (10th Cir. 1994). Similarly, the local rules specify that "[m]otions for summary judgment shall not be filed" in APA litigation. D.C.COLO.LAPR 16.1(d). When a Rule 15 opposition in an APA case contains a Rule 12(b)(6) argument that goes beyond the "complaint or petition for relief" (D.C.COLO.LAPR 10.2 (c)), the opposition must be converted to Rule 56, the opposition is properly denied, and justice is served by accepting the Amended Complaint and ordering Respondents to promptly file an Answer. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); Fed. R. Civ. P. 15(a)(3) (court may set a time to file a responsive pleading).

Respondents misstate the legal standard used for Rule 12(b)(6) motions. ECF 24 at 6. The Tenth Circuit recently confirmed that well-pleaded facts are to be taken as true and viewed in the light most favorable to the *Plaintiff/Petitioner*.

> When applying the *Twombly-Iqbal* standard, "we take [a] Plaintiff's well-pleaded facts as true, view them in the light most favorable to [the] Plaintiff[], and draw all reasonable inferences from the facts in favor of [the] Plaintiff[]." In considering a motion to dismiss, we may look to attached documents if they "are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."

*Audubon of Kan., Inc. v. United States DOI*, 67 F.4th 1093, 1108 (10th Cir. 2023) (internal citations omitted).

Here, the *Twombly-Iqbal* standard controls the interpretation of the well-plead facts. *Id*. While it may be appropriate in limited circumstances for a court to look at documents outside the complaint, such consideration is not appropriate where, as here,

Petitioners are disputing the authenticity of an AR that was assembled during litigation based on improper standards and agency instructions for mass deletion of relevant documents. ECF 25 at 5-8.[4] Accordingly, futility arguments cannot rely on AR excerpts.

By granting Petitioners' motion to amend the complaint, and denying Respondents' premature merits argument, this case may again move toward resolution.

**Argument**

Claim 8 meets the liberal pleading standards seeking relief based on the intertwined NEPA and CFLRP obligations that Respondents must address when considering proposals involving National Forest management. Those obligations were not met in approving the Salter Project, and implementing actions. Claim 8 is timely-filed. ECF 21 at 1. Instead of challenging the plausibility of relief sought by Claim 8 based on the allegations in the Amended Complaint, Respondent presents a merits argument based on a disputed AR. Justice is served by allowing the amendment.

## I. CFLRP and NEPA Impose Duties on the Forest Service

Respondents do not attack the Amended Complaint as written; they instead attempt to frame Claim 8 as a challenge limited to potential Salter Project funding. *See* ECF 24 at 2, 7-9. Petitioner's allegations, liberally construed, establish that "Defendants have publicly promoted the Salter Project as a "NEPA-ready" component of the Collaborative Forest Landscape Restoration Program ("CFLRP")." ECF 22-2 at ¶7,143 *citing* 16 U.S.C. § 7303. CFLRP has specific forest management criteria based on "landscape restoration strategies" that require analysis of pre-fire-suppression old growth conditions and "maximizing retention of old trees." 16 U.S.C. § 7303(b). Yet, "Plaintiffs, the DWRF, decisionmakers, and the public [were not] informed, through

[4] APA litigation must proceed on the "administrative record as it existed before the agency." *Olenhouse*, 42 F.3d at 1576; *Camp v. Pitts*, 411 U.S. 138 at 142 (1973).

NEPA analysis, of the criteria that would conform the Salter Project with CFLRP's forest restoration strategies." ECF 22-2 at ¶145.

Claim 8 presents two prongs. One prong seeks APA relief based on the mandate that CFLRP projects, such as the Salter Project, must comply with NEPA and other laws. 16 U.S.C. § 7303. The second seeks to set aside the Salter Project, which contained no NEPA analysis of CFLRP-based "management possibilities." *N.M. ex rel. Richardson v. BLM*, 565 F.3d 683, 711 (10th Cir. 2009) (holding that agencies are required to "include a reasonable management possibility" as "an alternative in its NEPA analysis, and the failure to do so was arbitrary and capricious."); ECF 22-2 at ¶151.

### A. CFLRP Requires Compliance with NEPA, ESA, and Other Federal Laws

The APA provides that courts shall hold unlawful and set aside agency actions, findings, and conclusions are that arbitrary, capricious, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). The first prong of Claim 8 addresses the CFLRP requirement that compliance with NEPA and "any other applicable law" is required for a project to be considered CFLRP-compliant. 16 U.S.C. 7303(a). As alleged in Claims 1-7, the Salter Project violates NEPA and other laws. ECF 22-2 at ¶¶91-141. Accordingly, a finding from this Court on the merits of all or any Claim(s) 1-7 for Petitioners that the Salter Project violated NEPA and/or other laws would mean that the Salter Project is not NEPA-compliant *or* CFLRP-compliant.

Respondents' implementation and promotion of the Salter Project as if it were "NEPA-ready" for CFLRP funding (ECF 22-2 at ¶7,143), when CFLRP's restoration criteria was not analyzed in the Salter Project EA, is arbitrary and capricious, not in accordance with law, and without observance of procedure required by law. 5 U.S.C. §§ 701-706; 16 U.S.C. § 7303(a) (CFLRP requires compliance with NEPA and other laws).

### B. CFLRP's Substantive Requirements were not Considered During the Salter Project Approval Process or Before Implementation

The second, NEPA-intertwined prong of Claim 8 involves the federal lands "management possibility" contained in CFLRP's substantive criteria, *e.g.* maximum retention of large trees, that needed to be analyzed as a NEPA alternative, which included analysis of pre-fire suppression conditions, ecological restoration, and retention of large trees. 16 U.S.C. § 7303 (b); *N.M. ex rel. Richardson,* 565 F.3d at 711(10th Cir. 2009). In failing to analyze this management possibility, Respondents violated NEPA's "twin aims" and "action forcing" purposes that benefit Petitioners, the public, and agency decisionmakers. *High Country Conservation Advocates v. United States Forest Serv*., 951 F.3d 1217, 1223 (10th Cir. 2020).

"All environmental analyses required by NEPA must be conducted at 'the earliest possible time.'" *N.M. ex rel. Richardson*, 565 F.3d at 707 (10th Cir. 2009) *quoting* 40 C.F.R. § 1501.2. The timing of NEPA analysis "necessarily requires a fact-specific inquiry." *Id*. at 718. Here, Petitioners allege that the violation occurred when the EA/FONSI was finalized in 2021 without considering CFLRP's substantive criteria, including pre-fire suppression old-growth conditions and landscape restoration strategies and that this was a reasonably foreseeable management possibility. ECF 22-2 at ¶145. There is no dispute that the San Juan National Forest pursued CFLRP funding in 2020, and was fully aware of CFLRP's restoration strategies. ECF 22-1.

Despite Respondents' representation, for the purposes of NEPA, the question of "potential" funding is a red herring that distracts from the realities of NEPA's procedural requirements. ECF 24 at 7-11. The CFLRP funding proposal was pending in 2020 while the EA was being prepared. ECF 22-1 at 1. CFLRP funding has been approved and used. ECF 25-5. The funding proposal and proposed Salter Project trigger the duty to "integrate the NEPA process with other planning at the earliest possible time to ensure that planning and decisions reflect environmental values." ECF 22-2 at 94 *quoting* 40

C.F.R. § 1501.2. Claim 8 correctly alleges that the EA omitted analysis of "the Salter Project eligibility for CFLRP funding" of restoration activities. ECF 22-2 at ¶145. CFLRP funding, and criteria for its use, provides a federal lands "management possibility." *N.M. ex rel. Richardson*, 565 F.3d at 711 (10th Cir. 2009).

Importantly, Claim 8 is not limited to a "mere funding" proposal. ECF 22-2 ¶¶7-9, 142-152. Claim 8 addresses Respondents' refusal to comply with Congressional mandates set forth in interrelated NFMA, NEPA, and CFLRP provisions directing the Forest Service management of the National Forests. ¶¶147-151. The close alliance between the Forest Service and private extractive interests has plagued National Forest Management for over a century. *Sierra Club v. Espy*, 38 F.3d 792, 795 (5th Cir. 1994). In 1974, Congress passed NFMA, "imposing new procedural and substantive restraints on the Forest Service." *Id*. Similarly, "NEPA creates a set of action-forcing procedures" that all agencies must follow. *High Country Conservation Advocates.,* 951 F.3d at 1223 (10th Cir. 2020*).* In 2009, Congress adopted CFLRP to provide the Forest Service with restricted funding to address historic mismanagement based on substantive standards, including analysis of pre-fire suppression conditions, ecological restoration, and retention of large trees. 16 U.S.C. § 7303 (b).

Viewed consistent with the duties placed on the Forest Service by NEPA and NFMA, CFLRP's restoration "management possibilities" were unlawfully ignored in the Salter Project NEPA process. *Richardson*, 565 F.3d at 711 (10th Cir. 2009). Nothing in the Salter EA compares any reasonable alternatives that address CFLRP "management possibilities" or CFLRP criteria that are remarkably similar to Petitioners' repeated requests for a NEPA alternative based on large and old tree retention. *See e.g.* ECF 22-2 at ¶¶77, 79; ¶145. Petitioners' requested relief could remedy this failure.

Claim 8 includes well plead allegations and relief that can be granted based on intertwined CFLRP and NEPA duties. *Johnson v. Precythe*, 141 S. Ct. at 1626 (2021).

## II. Claim Eight is not Barred by the Affirmative Defense of Exhaustion

As a matter of law, Respondents' decisionmaking regulations contain no administrative *appeals* to exhaust after the final agency actions–EA, FONSI, DN, CFLRP award, and House Creek timber contract–were issued. *Darby v. Cisneros*, 509 U.S. 137, 147 (1993) (the APA "explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule"). Exhaustion "is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Id*.

The Forest Service replaced the "appeal" of a final decision to superior agency authority with "pre-decisional objections." 78 Fed. Reg. 18481, 18482, 36 C.F.R. § 218.11(a). Forest Service regulations do not provide an appeal of any final decision in this litigation to "superior agency authority," and therefore, APA exhaustion requirements do not apply. *Darby* at 147, ECF 22-2 at ¶¶24-25. The same San Juan National Forest personnel who participated in the Salter Project EA and Draft FONSI preparation also carried out the review that rejected Plaintiffs' "pre-decisional objections." ECF 22-2 a ¶ 39, 83 -83. *Darby* also requires a stay during the appeal and here, once the pre-decisional objections to the draft DN/FONSI were resolved, the project could be immediately implemented when the final DN/FONSI issued. *Id*. at 14; ECF 1 at 77. Expanding *Darby's* exhaustion holding to cover pre-decisional objections would create "a trap for unwary litigants" that must be rejected. *Darby* at 147.

Even if exhaustion were required, the pleadings establish that Claim 8 is intertwined with Petitioners' NEPA comments, which focused on restoration science and urged consideration of alternative management opportunities. ECF 22-2 at ¶74, 76, 79, 126. Nothing Respondents cited precludes Claim 8's request for APA relief based on comments that alerted Respondents to *both* NEPA and CFLRP duties. *See* ECF 24 at 11-15. The Tenth Circuit has rejected agency demands that legal precision in the

administrative process is required to meet exhaustion requirements. *Farm & Livestock Bureau v. United States DOI*, 952 F.3d 1216, 1229 (10th Cir. 2020) (legal citation is not required where comments provided sufficient detail for agency response/remedy).

The interaction between the DWRF and the Forest Service, as well as the need to address a range of alternatives based on the retention of large trees, and historical old-growth conditions of the Salter Project area, were repeatedly raised during the Salter Project administrative process. ECF 22-2 at ¶¶77, 79 (noting numerous calls for large and old tree retention in scoping comments and similar asks in draft EA comments); ¶145 (CFLRP criteria, including "'*maximizing* the retention of large trees, as appropriate for the forest type' was not addressed in the NEPA analysis." *quoting* 16 U.S.C. § 7303 (b)(1)(E)(ii) (emphasis supplied)). The comments provided "sufficient detail to allow the agency to rectify the alleged violation" of treating the Salter Project as a NEPA-ready CFLRP project in its funding applications, while ignoring CFLRP criteria in the EA. *Farm & Livestock Bureau*, 952 F.3d at 1229 (10th Cir. 2020). Claim 8, whether seeking relief on the inadequacy of the EA/FONSI, or the APA violations flowing from treating the Salter Project as "NEPA-ready" despite the limited EA/FONSI, is administratively exhausted.

No exhaustion requirement applies in this litigation. *Darby* at 147. Nevertheless, exhaustion purposes were satisfied by Petitioners' comments and objections.

**<u>CONCLUSION</u>**

Petitioners respectfully request the Court approve the Amended Complaint. Claim 8 may be remedied by APA relief that, among other things, establishes that the Salter Project NEPA analysis unlawfully excluded viable forest management opportunities, including "landscape restoration strategies" based on pre-fire-suppression old growth conditions and "maximizing retention of large trees." 16 U.S.C. § 7303(b).

**RESPECTFULLY SUBMITTED, December 13, 2023**

*s/Travis E. Stills*
Travis E. Stills
Energy & Conservation Law
227 E. 14th Street #201
Durango, Colorado 81301
(970) 375-9231
stills@eclawoffice.org

*Attorney for Petitioners*

John W. Rader
San Juan Citizens Alliance
1309 E. 3rd Ave #5
Durango, CO 81301
(970) 259-3593
john@sanjuancitizens.org

*Attorney for Petitioner San Juan Citizens Alliance*

Allison N. Henderson
Center for Biological Diversity
P.O. Box 3024
Crested Butte, CO 81224
(970) 309-2008

Edward B. Zukoski
Center for Biological Diversity
1536 Wynkoop Street, Suite 421
Denver, CO 80202
(303) 641-3149
tzukoski@biologicaldiversity.org

*Attorneys for Petitioner Center for Biological Diversity*