**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-1501-REB

SAN JUAN CITIZENS ALLIANCE;
CENTER FOR BIOLOGICAL DIVERSITY;

Petitioners,

v.

DEREK PADILLA, in his official capacity as District Ranger, Mancos-Dolores Ranger District, San Juan National Forest;
DAVID NEELY, in his official capacity as San Juan National Forest Supervisor;
UNITED STATES FOREST SERVICE;
UNITED STATES DEPARTMENT OF AGRICULTURE;

Respondents.

---

**RESPONDENTS' OPPOSITION TO**
**PETITIONERS' ADMINISTRATIVE RECORD MOTION, ECF No. 25**

---

## INTRODUCTION

The Administrative Record ("Record") in this case contains all the materials considered directly or indirectly by the U.S. Forest Service decisionmaker who authorized the Salter Vegetation Management Project (the "Salter Project"). The Record thoroughly elucidates the basis for the decision and thus facilitates proper judicial review under the Administrative Procedure Act ("APA"). Petitioners fail to present clear evidence that the Record is inadequate and mischaracterize both facts and law in an attempt to create a new record for judicial review. Petitioners blur the distinct legal concepts of "completing" and "supplementing" the Record, and demand the agency add broad categories of materials en masse while failing to carry their burden of showing specific documents meet either test. The Court should deny this motion.

## BACKGROUND

Petitioners seek judicial review under the APA of the Salter Project, a forest health project on the San Juan National Forest. Compl., ECF No. 1.[1] Respondents filed the Record for the challenged decision, ECF Nos. 13-20, and the Parties agreed to a deadline for conferral on the scope and contents of the Record, ECF No. 21 at 1. On the last day of the conferral period, Petitioners sent Respondents a letter outlining several concerns. ECF No. 25-2 at 2-8. Respondents provided a detailed response, *id.* at 9-13, and filed a revised Certification of Administrative Record in response to Petitioners' concerns about the original certification's wording. ECF No. 23. The Parties have exchanged additional emails about the Record. *See* Ex. A.

## STANDARD OF REVIEW

### I. Judicial Review of the Sufficiency of the Administrative Record

An action seeking judicial review under the APA is "treated in the district court as an appeal." *Sierra Club v. United States*, 255 F. Supp. 2d 1177, 1181 (D. Colo. 2002) (citing *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994)). This standard requires agency action "be reviewed on the basis articulated by the agency and on the evidence and proceedings before the agency at the time it acted." *Am. Mining Cong. v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985). "[R]eliance on arguments, documents and other evidence outside the administrative record is . . . [an] illicit procedure . . . to determine the issues for review." *Olenhouse*, 42 F.3d at 1579.

The administrative record "consists of all documents and materials directly or

[1] Petitioners moved to amend their Petition on November 8, 2023. ECF No. 22. Respondents have opposed that motion in part. ECF No. 24.

indirectly considered by the agency." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993). It need not include every "relevant document contained in an agency's file cabinets." *Wildearth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1255 (D. Colo. 2010). And the record filed by the agency is entitled to a "presumption of regularity." *Citizens for Alts. to Radioactive Dumping v. U.S. Dep't of Energy*, 485 F.3d 1091, 1097 (10th Cir. 2007). Unless a petitioner carries the heavy burden of rebutting that presumption through "clear evidence" that the record is inadequate, courts should defer to the agency's certification of the "whole" administrative record. *Water Supply & Storage Co. v. U.S. Dep't of Agric.*, 910 F. Supp. 2d 1261, 1266 (D. Colo. 2012).

## II. Completing the Record vs. Supplementing the Record

This Court recognizes two procedures through which materials may be added to an inadequate record. *See id.* at 1265-7. First, the record may be "completed" by adding any materials that were directly or indirectly considered by the decisonmaker but omitted from the record. *Id.* at 1253. "In seeking to complete the record, a plaintiff must establish (1) when the documents were presented to the agency; (2) to whom; (3) and under what context." *Rocky Mountain Wild v. Walsh*, No. 15-cv-0615-WJM, 2016 WL 8234665, at *1 (D. Colo. May 10, 2016) (quotation marks and citation omitted). After establishing these elements, "the plaintiff must finally establish that the documents were indeed considered directly or indirectly by the relevant agency decision-makers." *Id.*

Second, the record may be "supplemented" with materials not considered by the agency but which "are necessary for the court to conduct a substantial inquiry." *Wildearth Guardians*, 713 F. Supp. 2d at 1253. Supplementation is appropriate only in several narrow, "extremely limited" circumstances. *Lee v. U.S. Air Force*, 354 F.3d

1229, 1242 (10th Cir. 2004); *see Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1278-79 (D. Colo. 2010) (collecting cases). The movant bears the burden of justifying supplementation. *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1278-79.

## ARGUMENT

### I. Petitioners Fail to Overcome the Presumption of Regularity

Before the Court may entertain requests to complete or supplement the Record, Petitioners must provide "clear evidence" overcoming the "presumption of regularity" to which the Record is entitled. *Bar MK Ranches,* 994 F.2d at 740. Petitioners attempt to carry this burden by: (1) claiming documents were "deliberately deleted," (2) criticizing the wording of the original Record certification, (3) asserting a log of materials "withheld" from the Record is required, and (4) highlighting inadvertently included post-decisional materials that the agency has addressed. Pets.' Admin. R. Mot. 5-11 ("Pets.' Mot."), ECF No. 25. None of these assertions undermines the presumption of regularity.

#### A. No Federal Records Were Deleted or Destroyed

Petitioners' argument that a document reminding agency staff of materials to include in the Project Record[2] is "clear evidence" that "agency personnel were directed to delete specific materials," Pets.' Mot. 7, is unsupported by the cited document, ECF No. 25-2 at 7-8. The email from Project Coordinator Jodi Leingang does not direct staff to "delete and destroy" records. Rather, it "reminds relevant agency personnel to place documents in the Project Record and attaches a reference document with more detail regarding which documents to include in and exclude from the Project Record."[3] *See* 3d

---

[2] A project record for an agency decision typically provides the starting point for compilation of the administrative record for judicial review under the APA.

[3] Petitioners incorrectly suggest the agency erred in not compiling a "contemporaneous"

Brinton Decl. ¶ 2; ECF No. 25-2 at 7. Indeed, Ms. Leingang later clarified that the "official record" file "is not the same file that we have been keeping our working drafts in," and reminded staff to *add* (not delete) documents to the Project Record. *See* Ex. B.

Petitioners' claim that all materials excluded from the Project Record were "deliberately deleted" and "destroy[ed]" is belied by the "more than 5,620 agency records" the Forest Service has produced to Petitioners in response to Freedom of Information Act ("FOIA") requests regarding the Salter Project. *See* Pets.' Mot. 14. Examples of materials Petitioners claim were categorically "deleted" and "destroyed," including internal drafts, emails, and deliberations, were all provided to Petitioners and clearly not "destroyed." *See* 3d Brinton Decl. ¶ 2; Ex. C.

Petitioners appear to also argue that the email and attached reference guide improperly directed the agency to categorically exclude from the Record all materials falling under six broad categories. Pets.' Mot. 5-7. The text of the email and guide contradict this argument. The guide explains that materials that did not factor into the line-officer's decisionmaking process should be excluded from the Project Record. ECF No. 25-2 at 8. The guide explains "[s]uch documents *may* include" those falling under the categories Petitioners highlight, but does not suggest all such documents must be excluded even if they were considered by the decisionmaker. *See id.* (emphasis added) (clarifying that emails may not be excluded "when they demonstrate resource analysis

---

record for the Salter Project. This Court has rejected that argument. *San Luis Valley Ecosystem Council v. U.S. Bureau of Land Mgmt.*, No. 14-cv-00680-RM, 2015 WL 13613523, at *6 (D. Colo. March 9, 2015) ("[T]he agency is allowed to *compile* the administrative record submitted to the Court through the records containing documentation of the agency's decisions."). *Bar MK Ranches* contains no analysis of the timing of record compilation. *See* 994 F.2d at 740; *contra* Pets.' Mot. 3.

that was not otherwise incorporated or addressed in other project record documents.”).

In sum, Petitioners’ claims that federal records were destroyed or that the agency improperly excluded certain categories of materials from the Record are unsupported and fail to undermine the presumption of regularity.

**B. Certification Flyspecking Does Not Defeat the Presumption of Regularity**

Petitioners also erroneously assert that the Record is not entitled to a presumption of regularity because Petitioners interpreted the First Declaration of Sara Brinton as suggesting “only ‘relevant’ portions of the [Record] were produced,” rather than “all records considered by the decisionmakers,” Pets.’ Mot. 7-8. But certification declarations are not required by the APA, *see Banner Health v. Sebelius*, 945 F. Supp. 2d 1, 18 (D.D.C. 2013), *vacated in part on other grounds*, 2013 WL 11241368 (D.D.C. July 30, 2013), and need not follow any “standard or pattern certification language.” *Kiakombua v. McAleenan*, No. 19-cv-1872 (KBJ), 2019 WL 4051021, at *1 (D.D.C. Aug. 27, 2019). Only a “‘[p]roper certification’ that the record is complete” is required. *Id.* at *1-2 (citation omitted). A “purportedly inadequately worded certification” does not “defeat[ ] the presumption of regularity.” *Banner Health*, 945 F. Supp. 2d at 18.

Here, even assuming a certification was required and its wording reviewable, the Second Brinton Declaration (and even the first)[4] more than suffices. Respondents explained during conferral that “[t]he use of the terms ‘relevant’ and ‘responsive’ in the Certification of the Administrative Record, ECF No. 13-1, was simply intended [to] identify documents that met the criteria for inclusion in the [Record], *i.e.*, materials that

[4] *See Kiakombua,* 2019 WL 4051021, at *2 (“the statement that, ‘to the best of my knowledge, the attached documents constitute a true and correct copy of materials relating to the captioned case,’ has been found to suffice”).

were directly or indirectly considered by agency decisionmakers." ECF No. 25-2 at 10. To avoid further confusion, Respondents filed a revised certification clarifying the standard under which the Record was compiled. ECF No. 23. Petitioners offer no explanation for their refusal to credit the sworn statement of the agency's National Environmental Policy Act ("NEPA") Coordinator who oversaw Record compilation. Imprecise wording does not overcome the presumption of regularity, and nothing in either declaration constitutes clear evidence the Record was improperly designated.

**C. A Privilege Log is Not Required**

The Forest Service has not asserted privilege over any materials that would otherwise be included in the Record. Thus, a privilege log is not required. Petitioners mischaracterize Respondents' conferral letter as stating: "any privileged information would 'fall outside the scope of the administrative record as a matter of law.'" Pets.' Mot. 9. But that selectively-cited sentence actually states: "*internal deliberations* are not themselves considered, directly or indirectly . . . [and] thus fall outside the scope of the administrative record as a matter of law." ECF No. 25-2 at 11-12 (emphasis added).

Internal deliberative materials include any communications, drafts, and other materials that reflect the *process* of consideration but were not themselves "considered" by the decisionmaker in reaching the challenged decision. A court reviewing agency action under the APA must determine whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Internal deliberations have no bearing on a court's review of an agency's stated reasons for exercising its discretion the way it did,

and to review such documents would run afoul of the principle that "inquiry into the mental processes of administrative decisionmakers is usually to be avoided." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).

The Ninth Circuit recently joined the Sixth and D.C. Circuits—the only Circuit Courts to have squarely addressed this issue—in holding that "deliberative materials are generally not part of the AR absent impropriety or bad faith by the agency." *Blue Mountains Biodiversity Project v. Jeffries*, 72 F.4th 991, 996 (9th Cir. 2023); *id.* at 997 ("[d]eliberative documents, which are prepared to aid the decision-maker in arriving at a decision, are ordinarily not relevant to that analysis"); *Oceana v. Ross,* 920 F.3d 855, 865 (D.C. Cir. 2019) ("predecisional and deliberative documents are not part of the administrative record"); *In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998) ("[T]he actual subjective motivation of agency decisionmakers is immaterial as a matter of law" to APA review); *In re U.S. Dep't of Def. & EPA Final Rule*, No. 15-3751, 2016 WL 5845712, at *2 (6th Cir. Oct. 4, 2016) (per curiam) ("Deliberative process materials are generally exempted from inclusion in the record in order to protect the quality of agency decisions by ensuring open and candid communications").[5]

Peitioners rely on *Save the Colorado v. Spellmon*, No. 18-cv-03258-CMA, 2023 WL 2402923 (D. Colo. March 7, 2023), to argue Respondents must prepare a privilege log cataloging materials not included in the Record. In *Spellmon*, this Court held that "if

[5] While the Tenth Circuit has not squarely addressed the issue, the now-unanimous approach of the Ninth, D.C., and Sixth Circuits is consistent with the Tenth Circuit's admonition that judicial review must be based only "on the basis articulated by the agency itself" and not its subjective internal motivations. *See Colo. Wild v. U.S. Forest Serv.*, 435 F.3d 1204, 1213 (10th Cir. 2006) (quoting *Motor Vehicle Mfrs.,* 463 U.S. at 50). Petitioners' citation to the standard in *Vaughn v. Rosen*, 484 F2d 820, 826 (D.C. Cir. 1973) applies only to FOIA cases and is inapposite here.

an agency wishes to withhold documents that would otherwise be included in an AR on the basis of [the deliberative process] privilege, it ought to be required to file a log of the withheld documents." *Id.* at *5. However, the Court failed to appreciate the distinction between materials subject to *deliberative process privilege*, which ordinarily are not produced in any context, and the broader concept of internal *deliberative materials*.[6]

Here, the agency has not withheld any documents that would otherwise be included in the Record on the basis of the deliberative process privilege.[7] Rather, the agency has not included deliberative materials in the Record in the first instance because such materials were not "considered" by the decisionmaker, regardless of whether any of those deliberative materials might be subject to the deliberative process privilege in a different context. Thus, "[b]ecause deliberative materials are not part of the administrative record to begin with, they are not required to be placed on a privilege log." *Blue Mountains Biodiversity Project*, 72 F.4th at 997.

**D. The Forest Service Has Already Addressed Post-Decisional Materials**

Petitioners made no mention of post-decisional materials during the conferral period, *see* ECF No. 25-2 at 2-6, but alerted Respondents nearly three weeks later that some documents in the Record appeared to post-date the decision. Ex. A. The Forest Service has now addressed each objection in Petitioners' Exhibit 3, ECF No. 25-3. *See*

---

[6] For example, the *Spellmon* Court acknowledged the historical split among district courts, including in the Ninth Circuit, over whether *deliberative materials* are properly part of an administrative record in the first instance, *see* 2023 WL 2402923, at *3-4, but described the question as whether "privileged documents" fall outside the legal bounds of an administrative record. Shortly after the order in *Spellmon* issued, the Ninth Circuit joined the D.C. and Sixth Circuits in holding "deliberative materials are generally not part of the AR." *Blue Mountains Biodiversity Project*, 72 F.4th at 996.

[7] Indeed, the agency has produced deliberative materials to Petitioners under FOIA without asserting they be withheld under the *deliberative process privilege*. *See* Ex. C.

Exhibit D. In sum, three post-decisional documents were inadvertently included and will be removed from the Record. *Id.* at 1. The remaining materials are websites the agency accessed prior to the decision but did not contemporaneously convert into PDF format. In Exhibits D and E, the agency explains its thorough efforts to obtain the pre-decision versions of websites and databases to the extent possible, including communications with website administrators. In the few instances where complete pre-decision versions were unavailable, the differences between the data appears negligible. Ex. D at 2-5.

Several inadvertent inclusions in a lengthy record, followed quickly by extensive efforts to remedy those errors, is not clear evidence that the Record is insufficient for judicial review under the APA. Petitioners "have failed to show how they were prejudiced by these documents," *Bar MK Ranches*, 994 F.2d at 740, and "and errors in such administrative proceedings will not require reversal unless Plaintiffs can show they were prejudiced." *Id.* The Court should reject Petitioners' attempt to overcome the presumption of regularity by highlighting a handful of now-remedied errors.[8]

## II. Neither Completion Nor Supplementation of the Record is Warranted

Even if Petitioners had carried their substantial burden of rebutting the presumption of regularity, Petitioners still fail to show that the Record should be completed or supplemented with the various categories of materials they seek.

### A. Post-Decision House Creek Implementation Materials

Petitioners move to "compel" a broad category of post-decision implementation

[8] The Court should also reject Petitioners' request that these materials remain on "the Court's record." Pets.' Mot. 11 n.2; *c.f. Colo. Envt'l Coal. v. Off. of Legacy Mgmt.*, No. 08-cv-1624-WJM-MJW, 2017 WL 897838, at *4 (D. Colo. Mar. 7, 2017) (declining "to declare [such] materials are fair game only for [Petitioners], not for [Respondents]").

materials related to the House Creek timber sale. Pets.' Mot. 11-12. This request appears to seek either: (1) Record completion by compelling the agency to compile a second Administrative Record for the House Creek sale; or (2) Record supplementation with all materials related to the House Creek sale and contract. Both requests fail.

First, House Creek timber sale materials are not properly part of the Record because the sale merely implements the Salter Project challenged in this case. The project's Decision Notice and underlying environmental analysis make clear that the Salter Project, once authorized, will be implemented through six treatment blocks (one of which is House Creek). FS003184; FS001840. The Petition challenges the decision to authorize a single project implemented through future treatments (including timber sales) without additional NEPA analysis for each sale. ECF No. 1 ¶¶ 81-89.

Petitioners argue their proposed Amended Petition challenges the House Creek sale as a separate, "additional final agency action" requiring its own administrative record, Pets.' Mot. 12, but the proposed Amended Petition makes no such allegation. The proposed House Creek additions are all incorporated into existing claims. *See* ECF No. 22-2*.* ¶¶ 93, 97, 99-100, 113, 119, 121, 133. "[A] petition for review of an agency order must specify the order or part thereof to be reviewed," or risk dismissal "unless petitioner's intent . . . can be fairly inferred from the petition for review or from other contemporaneous filings[.]" *San Luis Valley Ecosystem Council*, 2015 WL 13613523, at *8 (quotation marks and citations omitted). Here, none of the pleadings can be "fairly inferred" to challenge the House Creek timber sale as a final agency action distinct from Petitioners' challenge to the Salter Project. *Id.*; ECF Nos. 1, 22, 22-2.[9] Thus, an

[9] Had Petitioners asserted such a claim, Respondents would have opposed the amendment as futile because the House Creek timber sale contract simply implements

additional Record "for the preparation and award of the House Creek timber sale contract," Pets.' Mot. 12, is neither appropriate nor required.

Second, the Court should deny Petitioners' alternative "request that Respondents be compelled to produce and file all House Creek and other sale-tier Salter Project records with the Court as extra-record evidence regarding the use of a three-tiered NFMA decisionmaking process[.]" *Id.* Petitioners fail to identify the specific documents they believe should supplement the Record or the narrow exception under which they believe supplementation is warranted. This Court has rejected such blanket supplementation requests before. *See Strich v. United States*, No. 09-v-01913-RBJ-KLM, 2011 WL 13217937, at *3 (D. Colo. Oct. 17, 2011) ("The Court will not construct arguments on Plaintiff's behalf, and therefore will not review the proposed supplementation document by document."); *Colo. Wild Public Lands, Inc. v. Shoop*, No. 17-cv-01564-MSK, 2018 WL 11370775, at *5 (D. Colo. Apr. 24, 2018) (denying motion where movant "made no effort" to identify any basis for supplementing the Record).[10]

**B. Additional CFLRP Materials**

Petitioners next move "to compel production" of materials relating to the Collaborative Forest Landscape Restoration Program ("CFLRP"). Pets.' Mot. 12-14. Petitioners argue that the Forest Service should *complete* the AR with unspecified documents contained "on the CFLRP website" and "all agency records relevant to"

---

a decision already made. It is not a separate final agency action subject to separate review under the APA. *See, e.g.*, *Chemical Weapons Working Group v. U.S. Department of the Army*, 111 F.3d 1485 (10th Cir. 1997).

[10] Moreover, supplementation of the Record with House Creek timber sale materials is unnecessary to show that Respondents did not complete additional NEPA analysis before awarding the House Creek timber contract. *See* Pets.' Mot. 12. Respondents do not dispute this and do not object to Petitioners citing the contract for that proposition.

Forest Service collaborative processes and the CFLRP." Pets.' Mot. 13. Petitioners' request to complete the Record with "all relevant" CFLRP documents must be denied because they fail to proffer specific documents or establish that "the documents were indeed considered directly or indirectly by the relevant agency decision-makers." *Walsh*, 2016 WL 8234665, at *1 (internal quotation marks and citation omitted).

Petitioners' proposed new claim challenging the Salter Project based on the CFLRP would not change the scope or contents of the Record. The Record includes all materials directly or indirectly considered by agency decisionmakers in reaching the challenged *decision*, the Salter Project, *see* ECF No. 23 ¶ 2, not materials "relevant" to each of Petitioners' claims. *See* Pets.' Mot. 13. Thus, all the CFLRP materials the agency considered in authorizing the Salter Project are already contained in the Record. *See* ECF No. 25-2 at 12; Pets.' Mot. 13 (acknowledging CFLRP materials in the Record). Petitioners proffer no additional, specific CFLRP documents to complete the Record, let alone show when they were presented to the agency, to whom, under what context, and whether they were considered. *Walsh*, 2016 WL 8234665, at *1.[11]

---

[11] Petitioners request in passing that the Court grant them leave "to conduct discovery, and to renew its motion to supplement[.]" Pets.' Mot. 14. Petitioners fail to show why Record supplementation with all "relevant" CFLRP materials, let alone discovery, is warranted. There is "a strong presumption against discovery in administrative proceedings." *Conservation Force v. Salazar*, No. 1:10-cv-1262 BJR, 2012 WL 11947683, at *6 (D.D.C. Feb. 6, 2012). Before a court may consider allowing discovery, a petitioner must show by clear evidence that the record before the court is inadequate. *Bar MK Ranches*, 994 F. 2d at 740; *Sierra Club v. U.S. Dep't of Energy*, 26 F. Supp. 2d 1268, 1271 (D. Colo. 1998) (denying discovery where movant failed to rebut presumption that record was adequate for judicial review). Even then, the preferred course is to remand the record to the agency to include additional materials, not permit discovery, *Fla. Power & Light v. U.S. Nuclear Regul. Comm'n*, 470 U.S. 729, 744 (1985), and certainly not set aside the agency action itself, as Petitioners urge here by mischaracterizing the holding in *Olenhouse*. *See* Pets.' Mot. 4. A court should resort to discovery only where (1) there is a "strong showing of bad faith or improper behavior" or (2) "there have been no contemporaneous administrative findings" and discovery

**C. Documents Produced Under FOIA**

Petitioners next claim "more than 5,620 agency records" they received through FOIA were improperly excluded from the Record. Pets.' Mot. 14. But rather than attempting to carry their burden of showing *each* document was considered or falls under a supplementation exception, Petitioners seek a blanket ruling that "all agency responses and agency records responsive to FOIA Requests involving the Salter Project be deemed admissible as AR supplements during merits briefing pursuant to the NEPA exception." *Id.* Petitioners do not elaborate on "the NEPA exception" or why it applies here. This demand should be denied. *See Yellowstone to Uintas Connection v. Bolling*, No. 4:20-CV-00192-DCN, 2021 WL 5702158, at *7 (D. Idaho Dec. 1, 2021) (FOIA "is an entirely discrete legal concept that bears no relation to the administrative record compiled for a court's review under the APA."); *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002) (such arguments "confuse the administrative record . . . with FOIA's emphasis on every scrap of paper that could or might have been created.").[12]

**D. Additional Scientific Studies and Data**

Finally, Peitioners seek to complete the Record with five documents not identified during the conferral process. *See* ECF No. 25-1 ¶ 7; ECF No. 25-2 at 12-13;ECF No. 25-7. The agency will complete the Record with the 2021 Baker article, which was inadvertently omitted, and the 2020 Herd Management Plan, which is cited in the

provides "the only possibility for effective judicial review." *Cmty. for Creative Non-Violence v. Lujan*, 908 F.2d 992, 997 (D.C. Cir. 1990). Neither scenario applies here.

[12] Petitioners' broad-brush approach is also inappropriate. *See Wildearth Guardians*, 713 F. Supp. 2d at 1254 (petitioners cannot demonstrate completion of the record is warranted by merely "asserting, speculatively, that documents were relevant or before the agency at the time it made its decision."); *Colo. Env't. Coal.*, 2017 WL 897838, at *4 ("[A] 'data dump' approach is not enough to demonstrate a need to supplement[.]").

Project's Biological Evaluation. 3d Brinton Decl. ¶¶ 4-5.[13] The remaining studies were not considered by the decisionmaker, directly or indirectly. Petitioners note the studies were "summarized in Dr. Remke's review of scientific literature . . . during NEPA scoping," Pets.' Mot. 15, but fail to show they were considered by the decisionmaker or "so heavily relied on in [subordinate] recommendations that the decision maker constructively considered [them]." *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1276. Thus, Petitioners fail to show the "Baker and Williams (2015)," "Gehring, et al (2017)," and "Bryant et al (2019)" studies should be added to the Record. Pets.' Mot. 14-15.

## CONCLUSION

The Record is fully adequate for judicial review of Petitioners' APA challenge to the Salter Project, and Petitioners fail to carry their burden of demonstrating otherwise. The Court should deny Petitioners' Administrative Record Motion, ECF No. 25.

Respectfully submitted this 21st day of December, 2023.

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

*/s/ Emma L. Hamilton*
***Emma L. Hamilton*** (CA Bar No. 325360)
Trial Attorney, Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Phone: (303) 844-1361
emma.hamilton@usdoj.gov

*Attorneys for Respondents*

[13] The agency will also add all reference materials cited in supporting specialist reports, 3d Brinton Decl. ¶ 5, though their inclusion is not required given this Court's rejection of "consideration through citation," *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1277.

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on December 21, 2023, a true and correct copy of the above RESPONDENTS' OPPOSITION TO PETITIONERS' ADMINISTRATIVE RECORD MOTION, ECF No. 25, was served via CM/ECF on:

Travis E. Stills
John W. Rader
Allison N. Henderson
Edward B. Zukoski

Attorneys for Petitioners San Juan Citizens Alliance and
Center for Biological Diversity

/s/ *Emma L. Hamilton*
United States Department of Justice