**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| SAN JUAN CITIZENS ALLIANCE, and<br>CENTER FOR BIOLOGICAL DIVERSITY<br><br>Petitioners,<br><br>v.<br><br>DEREK PADILLA, et.al<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 23-cv-1501-REB |

---

**REPLY IN SUPPORT OF ADMINISTRATIVE RECORD MOTION**

---

Petitioners respectfully submit this reply supporting their Administrative Record ("AR") Motion. ECF 25.[1]

**Introduction**

With no direct evidence from the "decisionmaker who authorized the Salter Vegetation Management Project (the 'Salter Project')," Respondents fail to rebut Petitioners' clear evidence that the AR filed with this Court: 1) did not exist when the Salter Project decision(s) at issue[2] were made, ECF 27 at 4 FN3; 2) was compiled in response to litigation and limited to issues deemed relevant to the original complaint, *id*. at 7; 3) contains documents that post-date the decisions, *id*. at 9-10; and 4) excludes relevant/unspecified documents based on Respondents' privilege assertion(s). No testimony was proffered to refute the instruction to delete relevant records. ECF 24-2 at 8. Instead, Respondents proffered parts of a subsequent email that excluded "Attachment A," which repeated the deletion instruction. Ex. 8 at 4.

---

[1] Petitioners' related Rule 15 motion is fully briefed. ECF 22, 24, 26.
[2] Challenged agency actions include the Environmental Assessment ("EA"), Finding of No Significant Impact ("FONSI"), Decision Notice ("DN"), and the House Creek Timber Contract. *See e.g*. ECF 22-2 at ¶¶11, 14, 15, 18, 21, 26, 33, 35, 68, 86-87.

Clear evidence establishes that the AR does not contain "all documents and materials directly or indirectly considered by the agency" and thus no presumption of regularity should be afforded. *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993). The AR suffers from structural defects that cannot be cured with *post hoc* rationalizations; it is most appropriate for the Court to set aside the challenged agency actions. ECF 25 at 3; *Olenhouse v. Commodity Credit Corp*., 42 F.3d 1560, 1583 (10th Cir. 1994) ("Agency action will also be set aside if the administrative process employed violated basic concepts of fair play."). Respondents' attempt to complete the AR via prohibited motion in a response brief should be rejected. D.C.COLO.LCivR 7.1(d).[3] If vacatur is not issued, a remedial order that would allow Petitioners to play their role in completing the deficient AR would be appropriate. *Id*.

**Standard of Review**

Petitioners' AR motion seeks an order that *completes* the AR now <u>and</u> grants leave to *supplement* the AR by separate motion, if warranted, during merits briefing. *TransWest Express Ltd. Liab. Co. v. Vilsack*, U.S. Dist. LEXIS 126010, at *4 (D. Colo. July 7, 2021) ("A party may move to 'complete' or 'supplement' the record, or both."). Whether a party is seeking to complete or supplement an inadequate AR, clear evidence overcoming the presumption of administrative regularity must be provided in a motion. ECF 27 at 3; D.C.COLO.LCivR 7.1 (d).

Neither party asserts that the AR complies with relevant standards. ECF 27 at 4-5. Even when an apparently compliant AR is filed, clear evidence may be provided by either party that seeks to "complete" the record by providing omitted records or deleting improperly included records. Agencies are obligated to repair irregularities in a court filed AR. *Bar MK Ranches*, 994 F.2d at 740 ("An agency may not unilaterally determine

---

[3] "A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document."

what constitutes the [AR*]”),* applied by *San Luis Valley Ecosystem Council* v. BLM, 2015 WL 13613523, at *6, 2015 U.S. Dist. LEXIS 192654, at *15 (D. Colo. Mar. 9, 2015) (“Defendants had an obligation to correct their earlier deficient filing”).

When an AR omission is established, the question becomes how to complete the irregular AR given the parties’ unequal access to facts. *See* ECF 25 at 4 (addressing remedial options, including discovery). Several exceptions allow supplementation with extra-record evidence, and Respondents identified no reason that supplementation could not take place concurrent with briefing. ECF 25 at 14.

Respondents, contrary to precedent,[4] argue that agencies may compile an AR during litigation and then narrow its contents to only those portions of the agency actions it deems are relevant to the complaint allegations. ECF 27 at 3-4. The AR “compilation” here was not business as usual, but was created by pulling materials from agency files, involved instructions to delete of pertinent records, and added AR records generated Fall 2023 because records had not been properly maintained.

Binding precedent requires that judicial review is conducted on an administrative record “already in existence” when APA litigation is commenced. ECF 25 at 3 *quoting Camp v. Pitts*, 411 U.S. 138, 142 (1973). Agencies may not assemble “some new record made initially in the reviewing court.” *Id*. Under APA standards, the reviewing court may not uphold agency action on a *post hoc* AR assembled during litigation, because the Court cannot conduct the required “searching review.” *Id.* Respondents do not dispute that where, as here, the AR was not prepared when the decisions were finalized is structurally deficient administrative decisionmaking that allows the Court to set aside the challenged agency actions. *Olenhouse*,42 F.3d at 1583.

[4] Respondents assert by footnote, ECF 27 at 4-5 FN3, that this Court has allowed AR compilation during litigation. The brief ignores *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

## Argument

### I. Instructions to Destroy Records and *Post Hoc* AR Assembly Negates the Presumption of Regularity

Respondents did not contest the clear evidence of record destruction and post-decision materials in the AR. Respondents provided further clear and unretracted evidence establishing the AR was assembled during litigation. ECF 13-1 ¶¶2-3 (AR is responsive to allegations in the pleadings), ECF 23-1, ECF 27 at 9-10 (statements of counsel regarding post-decisional documents in the AR). Even if Respondents are able to complete the AR via later motion, the "presumption of regularity" no longer exists.

#### A. Record Destruction Prevents AR Completion and APA Review

Respondents ignore the portion of the emails directing agency personnel to delete relevant records. ECF 27 at 4-5. The deletion instruction was sent at least twice to the Interdisciplinary Team, stating "*documents that are used in the planning process that […] are preliminary, redundant, or not useful to the decision to be made […] should be deleted.*" ECF 25-2 (7/6/2022 email) at 8 ((emphasis suppled), Ex. 8 (7/15/2021 email) at 4 (identical Exhibit). The second email was also produced by FOIA response, but Respondents omitted Attachment A from the subsequent email. *Compare* ECF 27-3 *with* Ex. 8 at 4. The repeated direction to delete *"documents and data" that were "used in the planning process"* meets the clear evidence standard. Ex. 8 at 4.

The Response does not overcome clear evidence that agency staff were instructed that documents, data, and "drafts should be deleted prior to finalization of the project record." ECF 25-2 at 8, Ex. 8 at 4. That *some* deleted materials may have been produced via FOIA does not controvert clear evidence that agency specialists were directed to delete materials "used in the planning process*." Id.* This prevents the agency from producing an AR consisting of "all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches,* 994 F.2d at 739.

Unlike a case where an isolated mistake excluded a few records, it is now impossible to complete a Salter Project AR. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 50 (1983). The deletion instruction prevents a fair hearing on Petitioners' allegations that the Forest Service failed to address important forest restoration impacts and alternatives during the Salter Project NEPA process and "swept [important issues] under the rug." *Lee v. U.S. Air Force*, 354 F.3d 1229, 1242 (10th Cir. 2004). It is a structural defect and a violation of basic fair play that cannot, and need not, be overcome by committing litigation resources to *post hoc* AR rationalization and creation. ECF 25 at 4-5.

**B. *Post Hoc* AR Assembly During Litigation Warrants Full Relief**

Judicial economy and fairness are served by setting aside all challenged agency actions, and portions thereof, based on clear evidence establishing that the Salter Project AR "violated basic concepts of fair play." *Olenhouse,* 42 F.3d at 1583. Agency failure to establish and maintain the Salter Project AR is a structural defect that an agency's litigation counsel cannot overcome during litigation. *Id*. at 1575 ("[a]fter-the-fact rationalization by counsel in briefs or argument will not cure noncompliance by the agency with these principles."); *Motor Vehicle*, 463 U.S. at 50 (1983) ("an agency's action must be upheld, if at all, on the basis articulated by the agency itself"). The result, which does not require a showing of prejudice, is analogous to cases where "structural defects in the constitution of the trial mechanism […] defy analysis by "harmless-error" standard." *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991).

The preparation of the AR and/or the underlying decisions themselves, do not adhere to the Tenth Circuit's procedural structures that ensure agency decisionmaking and judicial review of agency actions are carried out in a fair and informed manner. *Olenhouse*, 42 F.3d at 1583. The agency failure to ensure an AR existed and was properly maintained prevents judicial review and therefore violates Petitioners' APA

rights; no additional prejudice is needed to set aside agency actions. *See Sullivan v. Louisiana*, 508 U.S. 275, 281-82 (1993) (The deprivation of a right, with consequences that are necessarily unquantifiable and indeterminate, qualifies as "structural error.").

NEPA/APA caselaw recognizes that prejudice from procedural failure involves environmental harms. ECF 25 at 4-5, *see Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1048 (10th Cir. 2023) (the APA determines the appropriate remedy in NEPA litigation). The omission of scientific studies from the AR, among other AR defects, links the structural errors in the decisionmaking process to Petitioners' environmental harms. *See e.g.* ECF 25 at 15, ECF 22-2 at 31, 34-37, 42.

**C. The Certifications Confirm Clear Evidence that No AR Existed**

Respondents do not dispute that the initial burden is on the agency to prepare, maintain, and provide the "administrative record as it existed before the agency." *Olenhouse*, 42 F.3d at 1576. The First Brinton Declaration is a sworn statement made on September 26, 2023, establishing that an AR did not exist when the agency actions (*e.g.* EA/DN/FONSI) were issued in 2021. ECF 13-1 at ¶2 (certifying the AR was limited to records "responsive to the allegations" in the June 14, 2023 Complaint). Respondents' reliance on District of Columbia caselaw is unpersuasive and contradicts *Olenhouse, Camp v. Pitts,* and other binding authority. ECF 27 at 6.

The Second and Third Brinton Declarations do not refute the previous testimony. ECF 23; ECF 27-3. Indeed, the Third Brinton Declaration provides additional testimony regarding the efforts to "coordinate compilation" and repair AR deficiencies during litigation. *Id*. Respondents have provided no evidence of the contents of a Salter Project AR "as it existed before the agency." *Olenhouse*, 42 F.3d at 1576.

**D. Respondents may not Unilaterally Exclude Privileged Materials**

Respondents provide no evidence regarding the creation or preservation of privileged information. Instead, they offer circular logic seeking unilateral agency control

of the contents of the AR by asserting that no privilege was asserted over information because privileged information would "not otherwise be included in the record." ECF 27 at 9. This logic begs the question and prevents Petitioners—and this—Court from knowing the extent of asserted privilege. *See Bar MK Ranches*, 994 F.2d at 740 ("An agency may not unilaterally determine what constitutes the [AR].").

Out-of-circuit caselaw cannot overcome binding Tenth Circuit precedent following *Bar MK Ranches* that ensures the agency's preparation of the AR is subject to judicial review based on the adversarial process. ECF 27 at 8. Respondents do not contest the analysis in *Save the Colo. v. Spellmon*, 2023 WL 2402923, at *4-*5 (D. Colo. Mar. 7, 2023) in light of Tenth Circuit precedent, or conversely, explain how Respondents' go-it-alone approach does not violate *Bar MK Ranches*. ECF 27. Perhaps recognizing that *Bar MK Ranches* is controlling, Respondents suggest no prejudice flows from allowing agencies to unilaterally determine the contents of the AR. ECF 27 at 10. As argued more fully above, "structural defects" are not subject to the "harmless-error" standard. *Supra* at 4-5 quoting *Arizona*, 499 U.S. at 309.

Finally, Respondents present a confusing attempt to distinguish between "deliberative materials" and "deliberative process" privileges, without regard to Tenth Circuit precedent. ECF 27 at 8, *see e.g. Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1227 (10th Cir. 2007) (Exemption 5 "is intended to protect the deliberative process of government and not just deliberative material."). Petitioners, like the Court, cannot assess Respondents' hypothetical distinctions, or determine whether any privilege was established or protected here. *Id*. In any event, Tenth Circuit precedent precludes the agency from dictating the AR contents, opting instead to structure the APA adversarial process to include the Petitioner and the Court. *Bar MK Ranches*, 994 F.2d at 740.

**E. Post Decisional Materials**

The inclusion of post-dated materials was brought to Respondents' attention as soon as it was apparent to Petitioners, which while after conferral was initiated, was prior to the filing of Petitioners' motion. Respondents have acted similarly, sending an email on the same day the response was filed (and nearly a month after Petitioners sought to confer) that admits the *post hoc* assembly used different documents than existed when the decision was made. ECF 27-2 at 1, *accord* ECF 27-3 (confirming post-hoc documents in the AR). Respondents' offer to reconstruct an AR that never existed, including by creating additional documents during litigation, is futile.

Respondents' attempts to complete the record in a response brief, ECF 27 at 9-10, provides additional clear evidence via party admission that further rebuts the presumption of regularity. As stated above, even if the omitted documents could be reliably reproduced, which is questionable at best, a fully-supported motion is the proper means for a party to *complete* an incomplete AR. ECF 27 at 3 quoting *Rocky Mountain Wild v. Walsh*, *LEXIS* 2016 WL 8234665, at *1 (D. Colo. May 10, 2016).

**II. The AR is Incomplete and Requires Supplementation**

The remaining two questions in Petitioners' AR motion are whether the AR should be *completed* with supplemental records and *supplemented* with extra-record evidence. Respondents, despite admitting the methods used to maintain the agency records resulted in an incomplete AR, at best, argues that the AR should be neither completed or supplemented but for two erroneously excluded records. ECF 27 at 10. This Court should reject Respondents' request.

**A. House Creek is an Agency Action Subject to Review**

Respondents' do not contest the case law treating timber sales as final agency actions subject to APA review, ECF 25 at 12. Instead, a perfunctory footnote is offered without any explanation as to how the cited case involving Army authorizations and

decisions is relevant. The footnote falls short of this Court's requirements for argument preservation. *San Juan Citizens Alliance v. Stiles*, 654 F.3d 1038, 1055-56 (10th Cir. 2011) (citing numerous Tenth Circuit cases regarding argument preservation).

Respondents' characterization of the House Creek Timber Contract AR as irrelevant, post-decisional documents ignores Respondents' chosen three-tiered approach to the Salter Project ECF 25 at 11-12. Deferring site-specific NEPA analysis to a non-NEPA timber contract decisionmaking tier goes to the heart of Petitioners' NEPA claim in the original complaint. ECF 22-2 at ¶85. Relief, including the entry of findings and vacatur, has been sought on the failure to conduct NEPA analysis awarding the contract, which is an "agency action taken in reliance on the EA and DN/FONSI." *Id*. p.51 at ¶¶ C-D, *id*. at ¶¶86-87, 93, 97, 99-101. Establishing the contents of the House Creek Timber Contract AR (or lack of an AR) is central to Petitioner's claims. ECF 25 at 11-12. Crucially, Respondents "do not oppose Petitioners' proposed additions to the Complaint regarding the House Creek timber contract." ECF 24 at 2.

Petitioners are unable, without discovery into the House Creek Timber Contract decisionmaking, to "identify the specific documents they believe should supplement the Record or the narrow exception under which they believe supplementation is warranted." ECF 27 at 12. Respondent does not argue the authorities Petitioners presented, and Petitioners' motion satisfies both requirements asserted by Respondents. ECF 27 at 12. Petitioners' request is tailored to remedy asserted AR deficiencies, with the basis for supplementation set out in detail. ECF 25 at 3-4, 11-14.

**B. CFLRP Materials**

Evidence that CFLRP materials in addition to those in the AR were considered directly or indirectly is unavailable to Petitioners, unless the Court grants discovery. Respondent's footnote should not be considered. ECF 27 at 13FN11. This challenge to the Salter Project includes several "challenged *decision*[s]" (ECF 27 at 13) under

review, including the EA, FONSI, DN, and House Creek Timber Contract award. Clear evidence establishes that CFLRP standards play a role in each. ECF 25 at 13 -14.

**C. Documents Produced Pursuant to FOIA Requests**

Without citation to Tenth Circuit precedent or any dispute that only 270 of over 5,620 records relevant to the Salter Project were included in the AR, Respondents assert that Petitioners must shoulder a "burden of showing *each* document was considered or falls under a supplementation exception." ECF 27 at 14. Such a requirement, even if it existed, would require Petitioner to conduct significant discovery. *Id*. Fortunately, the Tenth Circuit does not require Petitioners, or permit district courts, to expend such resources on *post hoc* rationalizations. ECF 25 at 4-5, 14.

**D. Scientific Studies and Data**

Respondents admit that two key scientific studies and data were omitted from the AR, further confirming clear evidence rebutting presumption of regularity. ECF 27 at 14-15.[5] Respondents oppose Petitioner's attempt to complete the AR with additional studies asserting, without any evidence, that an unspecified number of "remaining studies were not considered by the decisionmaker, directly or indirectly." ECF 27 at 15. Petitioners' proffered studies are properly included in the Court's record as supplemental, extra-record evidence. *Id.* at 3-4, ECF 25 at 14-15.

**Conclusion**

The *post hoc* AR does not satisfy Tenth Circuit standards for judicial review of agency decisionmaking, and based on the foregoing, Petitioners respectfully request their motion be granted.

[5] Petitioners anticipate consenting to Respondents' motion to complete the AR with these two studies, assuming proof of the required elements is provided. ECF 27 at 3.

**RESPECTFULLY SUBMITTED, January 4, 2024**

*s/Travis E. Stills*
Travis E. Stills
Energy & Conservation Law
227 E. 14th Street #201
Durango, Colorado 81301
(970) 375-9231
stills@eclawoffice.org

*Attorney for Petitioners*

John W. Rader
San Juan Citizens Alliance
1309 E. 3rd Ave #5
Durango, CO 81301
(970) 259-3593
john@sanjuancitizens.org

*Attorney for Petitioner San Juan Citizens Alliance*

Allison N. Henderson
Center for Biological Diversity
P.O. Box 3024
Crested Butte, CO 81224
(970) 309-2008

Edward B. Zukoski
Center for Biological Diversity
1536 Wynkoop Street, Suite 421
Denver, CO 80202
(303) 641-3149
tzukoski@biologicaldiversity.org

*Attorneys for Petitioner Center for Biological Diversity*