**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| SAN JUAN CITIZENS ALLIANCE, and<br>CENTER FOR BIOLOGICAL DIVERSITY<br><br>Petitioners,<br><br>v.<br><br>NICHOLAS MUSTOE, et al.,<br><br>Respondents. | ) | Case No. 23-cv-1501-RMR |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between Petitioners, San Juan Citizens Alliance and Center for Biological Diversity, and Respondents, Nicholas Mustoe, in his Official Capacity as District Ranger, Mancos-Dolores Ranger District, San Juan National Forest; Steven Hattenbach,[1] in his official capacity as San Juan National Forest Supervisor, U.S. Forest Service, a Federal Agency within the U.S. Department of Agriculture, and U.S. Department of Agriculture, an agency of the United States, who state as follows:

*Whereas*, the Salter Vegetation Management Project ("Salter Project") is a Forest Service management project on the Dolores Ranger District of the San Juan National Forest;

*Whereas*, the purposes of the Salter Project are to (1) improve resilience and resistance to epidemic insect and disease outbreaks; (2) increase the structural

[1] Pursuant to Federal Rule of Civil Procedure 25(d), current Forest Supervisor Steven Hattenbach is automatically substituted as a Party for former Forest Supervisor David Neely.

diversity of the ponderosa pine forest represented across the landscape; and (3) provide economic support to local communities by providing timber products to local industries in a sustainable manner;

*Whereas,* on November 18, 2022, the Forest Service issued a Decision Notice and Finding of No Significant Impact ("DN/FONSI") (ECF 16-4 at 394, *et seq.*) authorizing five types of silvicultural treatments in six treatment blocks within the Salter project area: Boggy Draw, House Creek, Carlyle, Salter, Turkey, and Plateau Creek;

*Whereas*, the DN/FONSI requires implementation of timber sale contract terms and conditions, including applying the "descending order of choice protocol" described in the DN/FONSI and Salter Project Environmental Assessment ("EA") (ECF 15-5 at 38, *et seq.*), to address site-specific conditions, design features, and other mitigation ("Descending Order of Choice");

*Whereas*, the Forest Service awarded one timber sale contract as part of the Salter Project, the House Creek timber contract, on April 12, 2023 (ECF 25-4);

*Whereas*, Petitioners filed a lawsuit seeking judicial review of the DN/FONSI and Salter Project EA on June 14, 2023;

*Whereas* the Salter Project was developed in collaboration with the Dolores Watershed Resilient Forest Collaborative ("DWRF"),[2] which continues to collaborate with the Forest Service regarding implementation of the Salter Project;

[2]"DWRF" has changed its name to the Dolores Watershed Collaborative ("DWC"). "DWRF" is used in this document, and refers to DWRF, DCW, and any successor collaborative that involves the Salter Project Area.

*Whereas*, the Parties have worked to apply existing data at the treatment block scale to address Petitioners' site-specific concerns regarding retention of large trees and promotion of old growth characteristics;

*Whereas,* the Parties agree that this Agreement conforms to applicable federal laws, is consistent with the San Juan Forest Plan, and is within the scope of the Salter Project DN/FONSI and analysis in the EA;

*Whereas*, to avoid additional costs and management disruptions related to the uncertainties of litigation, the Parties agree that settlement and dismissal of this action is in the public interest and have agreed on the following settlement terms.

*Therefore*, the Parties agree to the following:

1. The Descending Order of Choice, paragraphs (a)-(l) contained in the Salter Project Decision Notice/FONSI and its Appendix A (Project Design Features), will apply to all timber sales implementing the Salter Project.
2. In addition, in all timber sale prescriptions authorized under the Salter Project, except for those already sold in the House Creek treatment block, the Forest Service will replace the 25" diameter threshold that precedes paragraphs (f)-(l) in the Descending Order of Choice with the following diameter thresholds based on treatment block, which will prohibit harvest of live trees with a diameter at breast height ("DBH") that is more than the largest 10% of DBH based on aggregated existing common stand exam ("CSE") data:

| **Treatment Block** | **Diameter Threshold for Harvest Under (f)-(l)** |
|---|---|
| Boggy Draw | 22" |
| Carlyle | 20" |
| House Creek | 22" |
| Salter | 23" |

| | |
|---|---|
| Turkey | 22” |
| Plateau Creek | 22” |

3. The Forest Service will apply the pre-settlement visual indicators from the House Creek and Lower Carlyle prescriptions to all future prescriptions in the Salter Project.
4. The Forest Service shall prioritize implementation of the vegetative management activities in the Carlyle, Salter, and Boggy Draw Treatment Blocks.
5. The Forest Service shall participate in DWC led field trips pre- and post- treatment implementation of the Salter Project.
6. This Agreement may be modified or enforced by the Court upon good cause shown (i) by written stipulation filed with and approved by the Court, or (ii) upon written motion filed by one of the parties pursuant to Paragraph 13 and granted by the Court. In the event that any party seeks to modify the terms of this Agreement, or in the event of a disagreement between the parties concerning any aspect of this Agreement, or if a party believes that the other party has failed to comply with this Agreement, the party seeking modification or enforcement shall provide the other party with written notice of the claim. The Parties agree that they will meet and confer (telephonically or in-person) at the earliest possible time in a good-faith effort to resolve the dispute before seeking relief from the Court. If the parties are unable to resolve the claim themselves after 14 days following receipt of a written notice or such longer time agreed to by the parties, either party may seek relief from the Court. This Agreement shall not be enforceable through a proceeding for contempt of Court.
7. Respondents agree to pay, and Petitioners agree to accept, the lump sum of forty thousand dollars ($40,000) in full and complete satisfaction of any and all claims,

demands, rights, and causes of action pursuant to the Equal Access of Justice Act ("EAJA"), 28 U.S.C. § 2412(d), and/or any other statute and/or common law theory, for all attorneys' fees, costs, and expenses incurred by Petitioners in this litigation.

a. Respondents' payment, as identified in Paragraph 7, shall be accomplished by electronic funds transfer into the client trust account for Petitioners. Within 10 days of execution of this Settlement Agreement, Petitioners will provide Respondents with the necessary account information to effectuate this payment.

b. Respondents agree to make all reasonable efforts to submit all necessary paperwork to the appropriate funding authorities at the Department of Agriculture within fourteen (14) days of receipt of payment information under Paragraph 7.a.

c. Petitioners agree to send confirmation of the receipt of the payment to counsel for Respondents within 14 days of such payment.

d. Except for the obligations specifically required under this Settlement Agreement, Petitioners agree to hold harmless the Respondents in any litigation, further suit, or claim arising from the payment of the agreed-upon $40,000.00 settlement amount, including any claims that may arise as to any apportionment of the payment amount to Petitioners and Petitioners' counsel.

e. Petitioners acknowledge that under 31 U.S.C. §§ 3711, 3716, 26 U.S.C. § 6402(d), 31 C.F.R. §§ 285.5, 901.3, and other authorities, the United States will offset against the attorney fee award Petitioners' delinquent debts to the United States, if any. *See Astrue v. Ratliff*, 560 U.S. 586 (2010).

8. This Agreement constitutes the complete and final resolution of all legal, equitable, and administrative claims arising out of the Decision Notice, FONSI, and EA for the Salter Project. In acknowledgement of and in exchange for the promises and other consideration contained in this Agreement and the payment by Respondents to Petitioners referenced in Paragraph 7 above, Petitioners and their respective affiliates, successors, and assigns, hereby unconditionally and irrevocably release, waive, and discharge Respondents from any and all claims based on the same transactions or occurrences that are set forth in the Complaint, ECF No. 1, and Proposed Amended Complaint, ECF No. 22-2. Nothing in this settlement prohibits Petitioners from filing future lawsuits to challenge any future final agency actions undertaken by Defendant, including new final agency actions that modify the Salter Project. This Agreement does not create any additional rights to challenge agency action that do not independently exist apart from this Agreement.
9. Nothing in this Agreement prohibits the Forest Service from undertaking new projects or agency actions within the original Salter Project area.
10. It is expressly understood and agreed that this Agreement was jointly drafted by Petitioners and Respondents. Accordingly, the Parties agree that any and all rules of construction, to the effect that ambiguity is construed against the drafting party, shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of the Agreement.
11. This Agreement contains all agreements between Petitioners and Respondents, and is the final and sole agreement between the Parties concerning Petitioners' June 14, 2023 Petition for Review of Agency Action. Petitioners and Respondents agree that

any other prior or contemporaneous representations or understandings not explicitly contained in this Agreement, whether written or oral, are of no further legal or equitable force or effect. Any subsequent enforcement or modification of this Agreement must be made pursuant to Paragraph 6.

12. This Agreement is executed solely for the purpose of compromising and settling this litigation and nothing herein shall be construed or offered in evidence in any proceeding as an admission, implied or otherwise, by Petitioners or Respondents to any fact, claim, or defense on any issue in this litigation and has no precedential value.

13. The Parties understand that notwithstanding their efforts to comply with the commitments contained herein, events beyond their control may prevent or delay such compliance. Such events may include natural disasters as well as unavoidable legal barriers or restraints, including those arising from actions of persons or entities that are not party to this Agreement. A party seeking to delay or forego actions under this Agreement due to events beyond their control must file a status report notifying the Court and Petitioners of the underlying circumstances and conditions as soon as practicable, and engage in the dispute resolution and modification process set forth in Paragraph 6. Force majeure shall not continue beyond the circumstances and conditions that prevent timely performance, and shall not apply if alternative means of compliance are available.

14. Nothing in this Agreement shall be interpreted as, or shall constitute, a commitment or requirement that Respondents obligate or pay funds, or take any other actions in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable

law. Nothing in this Agreement is intended to waive any obligation to exhaust administrative remedies; to constitute an independent waiver of the United States' sovereign immunity; to change the standard of judicial review of federal agency actions under the Administrative Procedure Act ("APA"); or to otherwise extend or grant this Court jurisdiction to hear any matter, except as expressly provided in the Agreement. No provision of this Agreement shall be interpreted as or constitute a commitment or requirement that the Defendants take actions in contravention of the National Environmental Policy Act ("NEPA"), the National Forest Management Act ("NFMA"), the APA, or any other law or regulation, either substantive or procedural.

15. The undersigned representatives of each party certify that they are fully authorized by the party or parties they represent to enter into the terms and conditions of this Agreement and to legally bind those parties to it.

16. The terms of this Agreement shall become effective upon entry by the Court of the proposed order granting the Parties' joint motion to dismiss, which includes the retention of jurisdiction to modify or enforce this Agreement. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

**Signed on June 23, 2025**

*s/ Travis E. Stills*
Travis E. Stills
Energy & Conservation Law
227 E. 14th Street #201
Durango, Colorado 81301
(970) 375-9231
stills@eclawoffice.org

*Attorney for all Petitioners*

**Signed on June 23, 2025**

*s/Emma L. Hamilton*
Emma L. Hamilton
United States Department of Justice
Environment & Natural Resources Division
c/o United States Attorney's Office
201 Third Street, N.W., Suite 900
Albuquerque, New Mexico 87102
(202) 305-5689
emma.hamilton@usdoj.gov

*Attorney for all Respondents*